DECISION
Robert Schnittker, Leroy Myers,[1] and Coradine Myers, appellants-appellants, appeal a judgment of the Franklin County Court of Common Pleas. The trial court affirmed an order of the State of Ohio, Department of Natural Resources, appellee-appellee, requiring appellants to remove their docks for failure to enter into and pay submerged land lease.
Appellants own two parcels of property located on the south shore of Kelleys Island, an island located within Lake Erie in the state of Ohio. Schnittker purchased his property in 1984 and the Myers purchased their property in 1975. Both parcels had existing docks on Lake Erie at the time of purchase.
In June 1993, appellee sent a letter to Leroy Myers, which stated in part:
 [Appellee] as part of its ongoing management of the waters and submerged lands of Lake Erie, has completed an inventory of structures placed in the waters and upon the submerged lands of Lake Erie for Kelleys Island.
 This inventory was accomplished by a review of aerial photographs, ownership maps from Erie County and a site inspection. This review and inspection has revealed that adjacent to your property is a structure that occupies the submerged lands of Lake Erie without a submerged lands lease as required by law.
 Pursuant to [R.C.] 1506.11, you, as the upland owner, must apply for and receive a Lake Erie submerged lands lease in order to continue the use and have ownership of the structure. Enclosed for your convenience is an application to lease Lake Erie submerged lands.
A similar letter was sent to Schnittker in January 1997.
Appellants did not file an application with appellee for a submerged land lease. In a letter dated May 8, 1997, Schnittker's attorney stated the reason why an application had not been filed was because "Schnittker's dock has existed since the early 1900s. It is my understanding that the facility would be exempt from applying for a submerged land lease." A letter from appellee to Schnittker, dated March 11, 1998, stated in part:
 [Appellee] has notified you, or your attorney, several times in the past of the necessity of obtaining a Lake Erie submerged land lease for your dock ***. To date, we have not received a completed submerged land lease application.
 Pursuant to [R.C.] 1506.10, you are hereby ordered to remove your dock from the submerged lands of Lake Erie within thirty (30) days of the receipt of this letter.
Appellee sent an identical letter to the Myers the same day, ordering removal of their dock within thirty days.
Appellants requested a hearing concerning appellee's order. On July 14, 1998, a hearing was held before a hearing officer who reaffirmed appellee's order. The hearing officer made the following conclusions of law: (1) the submerged lands of Lake Erie upon which appellants' docks are built are owned and controlled by the state of Ohio in trust for the people of the state; (2) in order to use and maintain their docks, appellants had to apply for and enter into submerged land leases pursuant to R.C. 1506.11; and (3) appellants had to either obtain a submerged land lease or remove their docks.
Appellants filed objections to the hearing officer's report. On May 27, 1999, appellants' objections were overruled, and the report and recommendations of the hearing officer were approved. On June 8, 1999, appellants filed a notice of appeal with the Franklin County Court of Common Pleas. In their appeal, appellants argued that since their docks were built prior to the passage of the Fleming Act in 1917, which authorized appellee to require property owners to acquire submerged land leases, the act did not apply to them. On August 9, 2000, the trial court affirmed appellee's decision ordering appellants to remove their docks for failing to enter into and pay submerged land leases for the land underneath their docks. The court stated:
 The State owns the land in trust for the people and the peoples' rights are subservient to those of the government. It is not the dock that the State is attempting to lease, but the use of the submerged land on which it stands. The littoral owners of the upland have no title beyond the natural shoreline; they have only the right of access and wharfing out to navigable waters. That right is a property right although not a tangible one and is subject to the superior right of the state as the owner in title for trust for the people of the state.
* * *
 The ability to regulate the submerged land under Lake Erie has been vested in the State of Ohio since 1803. Regulation includes leasing the submerged land to a littoral owner who desires to access Lake Erie for navigational purposes. Failure to comply with the State's lawful regulation of the land it holds in trust for the people justifies the order of removal of the encroaching private use. (Citations omitted.)
Appellants appeal this decision, and present the following five assignments of error:
 I. THE TRIAL COURT ERRED BY FINDING THE STATE OF OHIO THROUGH THE DEPARTMENT OF NATURAL RESOURCES BY USE OF EX POST FACTO REGULATIONS CAN REQUIRE AN UPLAND PROPERTY OWNER OF A PRE-EXISTING DOCK TO ENTER INTO A SUBMERGED LAND LEASE.
 II. THE TRIAL COURT ERRED BY FINDING THAT THE STATE OF OHIO THROUGH THE DEPARTMENT OF NATURAL RESOURCES CAN ORDER AN UPLAND PROPERTY OWNER TO REMOVE A PRE-EXISTING DOCK FROM THE SUBMERGED LANDS OF LAKE ERIE IF THE PROPERTY OWNER REFUSES TO ENTER INTO A LEASE FOR THE EXISTING DOCK.
 III. THE TRIAL COURT ERRED BY NOT FINDING THAT SUBJECT ORDERS ISSUED BY THE DIRECTOR OF THE OHIO DEPARTMENT OF NATURAL RESOURCES AMOUNTED TO A TAKING AS DEFINED BY THE U.S. CONSTITUTION AT THE FIFTH AND FOURTEENTH AMENDMENTS AND OHIO CONSTITUTION AT ARTICLE I SECTION 19 REQUIRING THE PAYMENT OF JUST COMPENSATION FOR THE TAKING OF PRIVATE PROPERTY.
 IV. THE TRIAL COURT ERRED BY NOT FINDING THAT THE ORDERS OF DONALD C. ANDERSON, DIRECTOR OF THE OHIO DEPARTMENT OF NATURAL RESOURCES, TO REMOVE THE MYERS AND SCHNITTKER DOCKS FROM SUBMERGED LANDS OF LAKE ERIE UPON WHICH THEY REST AND PROVIDE THE OWNERS ACCESS TO NAVIGABLE WATERS OF LAKE ERIE EXCEED HIS STATUTORY AUTHORITY.
 V. THE TRIAL COURT ERRED IN FINDING APPELLANTS' DOCKS ARE UNLAWFUL ENCROACHMENTS AND THE APPELLEE'S ACTION IN ORDERING REMOVAL IS PUNITIVE.
Appellants argue in each of their five assignments of error that the trial court abused its discretion when it found appellee's order should be enforced. Appellants contend in each of their assignments of error that appellee cannot require them to enter into a submerged land lease and also order the removal of their docks for failure to obtain a land lease. Because of the similar nature of appellants' arguments, we will address all of them together.
The standard of review for the court of common pleas of an administrative appeal is recognized in R.C. 119.12, which states in part:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
"The standard of review to be applied by the court of appeals in an R.C.2506.04 appeal is `more limited in scope.'" (Emphasis added.) Henley v. City of Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147, quoting Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative, and substantial evidence. Workman v. Franklin Cty. Dist. Bd. of Health (Mar. 27, 2001), Franklin App. No. 00AP-905, unreported. The common pleas court is restricted to determining whether an administrative agency's decision "was supported by reliable, probative, and substantial evidence, and was in accordance with law, and the further appeal to the court of appeals [is] limited to a determination of whether the common pleas court had abused its discretion." State ex rel. Baker v. State Personnel Bd. of Review (1999), 85 Ohio St.3d 640, 643.
 In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion "*** implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, quoting Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. (Citations omitted.)
The United States Supreme Court, the Ohio Legislature, and the courts within the state of Ohio have adopted the "public trust doctrine" regarding the question of who owns the submerged lands of Lake Erie. According to the public trust doctrine:
 [O]wnership of and dominion and sovereignty over lands covered by tide waters, within the limits of the several states, belong to the respective states within which they are found, with the consequent right to use or dispose of any portion thereof, when that can be done without substantial impairment of the interest of the public in the waters, and subject always to the paramount right of congress to control their navigation so far as may be necessary for the regulation of commerce with foreign nations and among the states. Illinois Central RR. Co. v. Illinois (1892), 146 U.S. 387, 435, 13 S.Ct. 110, 111.
The principle of state dominion over the navigable waters within its boundaries has been carried over from the common law of England and is firmly established in American jurisprudence. Thomas v. Sanders (1979),65 Ohio App.2d 5, 8.
 For when the Revolution took place, the people of each state became themselves sovereign; and in that character hold the absolute right to all their navigable waters, and the soils under them, for their own common use, subject only to the rights since surrendered by the constitution to the general government. Martin v. Waddell (1842), 41 U.S. 367, 410.
Even though, according to English common law, the public trust doctrine applied only to lands covered by "tide waters," because of the similar nature of the Great Lakes to the ocean, the "same doctrine is *** held to be applicable to lands covered by fresh water in the Great Lakes, over which is conducted an extended commerce with different states and foreign nations." Illinois Central, at 435. The public trust doctrine has existed in the state of Ohio since it was admitted to the Union in 1803. Thomas, at 9. As stated in R.C. 1506.10:
 It is hereby declared that the waters of Lake Erie consisting of the territory within the boundaries of the state, extending from the southerly shore of Lake Erie to the international boundary line between the United States and Canada, together with the soil beneath and their contents, do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state, for the public uses to which they may be adapted, subject to the powers of the United States government ***.
According to the public trust doctrine, the state of Ohio simply holds title to the submerged lands of Lake Erie "as trustee for the people." State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, paragraph two of the syllabus.
"Littoral rights are those ownership rights of a property owner whose land abuts a lake to the use and enjoyment of the waters of and the land underlying the lake." Lemley v. Stevenson (1995), 104 Ohio App.3d 126,133. Owners of properties that border Lake Erie have limited littoral rights based upon the "public trust" doctrine. Id. In the present case, appellants possess littoral rights because their properties border Lake Erie. In addition to the rights common to the public, littoral owners have the right to "construct landings, wharves or piers" in order to have navigation access "when not forbidden by public law." United States v. River Rogue Improvement Co. (1926), 269 U.S. 411, 418,46 S.Ct. 144, 146. The Ohio Supreme Court has stated that the littoral owner's right to wharf out to navigable waters is subject to: (1) "the paramount control by the United States of navigable waters and its power to establish harbor lines and regulations therein," and (2) "the title of the state, as trustee for the people, to the land under the waters of Lake Erie within the limits of the state of Ohio." Squire, supra, paragraph one of the syllabus. The legislature, through R.C. 1506.11, has authorized appellee to regulate the submerged lands of Lake Erie by leases of "all or any part of the state's interest" in the waters and lands presently underlying the waters of Lake Erie.
In the present case, the state of Ohio, as the trustee for the public, holds the title to the submerged land which lies beneath appellants' piers. Even though the prior owners of appellants' property erected piers on the submerged land, the state of Ohio did not relinquish its rights to the submerged land by acquiescense. "The state as trustee for the public cannot, by acquiescence, abandon the trust property or enable a diversion of it to private ends different from the object for which the trust was created." State v. Cleveland Pittsburgh RR. Co. (1916), 94 Ohio St. 61,80. "[W]hatever the littoral owner does is done with knowledge on his part that the title to the subsoil is held by the state, as trustee for the public, and nothing can be done which will destroy or weaken the rights of the beneficiary's trust estate. *** Mere nonuse of the trust property by the public cannot authorize the appropriation of it by private persons to private uses and thus thwart the purpose of the trust." Thomas, at 14.
While appellants have a right to construct and maintain a pier in order to access navigable water, their right to wharf to navigable water must yield to the paramount right of the state as such trustee to enact regulatory legislation. "The power to prescribe such regulations resides in the Legislature of the state." Id. at 79. "The authorities show that the right of a riparian or littoral owner is always subject to the paramount authority of the state and federal governments for the ends set forth." Id. at 83. If we were to hold that appellants' rights to wharf trump the rights of the state to regulate, we would in effect eviscerate the property rights of the state because without the right to regulate the use of its own property, in effect, the state would have no property rights. As stated in another case and applied to the present case:
 [T]he public trust doctrine and the statutory procedure for the lease of submerged lands in the waters of Lake Erie deprive the trial court of the authority to permanently enjoin the state from leasing submerged land underlying the waters along [appellants'] shoreline for the purpose of [regulating piers]. [Appellants] do not own the submerged land. The state holds that land in trust for the benefit of the public. Therefore, the trial court could not, in effect, transfer title of the trust estate to [appellants]. Lemley, at 136.
Accordingly, we find that the state of Ohio has the authority to regulate appellants' use of the state's property. The state's authority to regulate includes the right to enact reasonable leases of its property and the authority to enforce those regulations. Appellants refused to submit to these regulations and, as a consequence, the state has ordered the removal of their docks. We do not find such an order to be unconstitutional or contrary to law.
Appellants also argue that appellee's order is unconstitutional because the state cannot enact ex post facto regulations. However, the state is not attempting to enforce regulations prior to the date of their enactment but, instead, is attempting to regulate state property. Additionally, the passage of the Fleming Act in 1917, the basis of the current version of R.C. 1506.10 and 1506.11, merely codified the existing law in this state with respect to Lake Erie. Thomas, at 9. "[T]he trust doctrine of state control over the submerged lands of Lake Erie and its bays for the beneficial ownership of the public, which originated in England and has been strongly reinforced in this country by judicial decision, has existed in this state since Ohio was admitted to the union in 1803." Id.
Appellants further argue that appellee's actions constitute a "taking" as defined by the United States and Ohio Constitutions. The right to be entitled to compensation for the loss and damage suffered by a littoral owner is allowed when the state "erects works or structures which are not in aid of navigation, water commerce or fishery, and which destroy, impair or impede the littoral rights of proprietors along the shore of Lake Erie, or which destroy or appropriate wharves and structures built by such littoral proprietors in front of their property in aid of navigation." Squire, paragraph six of the syllabus. In the present case, the state is not seeking to destroy appellants' piers in order to erect a structure that would impede appellants' littoral rights but, instead, is attempting to enforce a regulation, which appellants have refused to comply with.
Accordingly, we find the trial court did not abuse its discretion when it held appellee's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Appellants' five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ____________________ BROWN, J.
PETREE and BOWMAN, JJ., concur.
[1] Pursuant to App.R. 29(A), a suggestion of death of Leroy Myers was filed on February 16, 2001, by appellee.