LEMLEY et al., Appellees,

v.

STEVENSON et al., Appellants.

[Cite as *Lemley v. Stevenson* (1995), 104 Ohio App.3d 126.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–94–40.

Decided May 26, 1995.

*William H. Smith, Jr.,* for appellees.

*Christopher M. Marinko,* for appellants William J. Stevenson and Therese O. Stevenson.

*Betty Montgomery,* Attorney General, and *John P. Bartley,* Assistant Attorney General, for appellant Ohio Department of Natural Resources.

*Robert Kerry Kehoe,* urging reversal for *amicus curiae,* Coastal States Organization, Inc.

---

*Per Curiam.*

This is an appeal from a judgment of the Erie County Court of Common Pleas which granted plaintiffs-appellees' request for a permanent mandatory injunction and declaratory judgment.

The undisputed facts relevant to the disposition of the issues in this case are as follows.

Defendants-appellants, William and Therese Stevenson, are the owners of shoreline property on the south side of Kelleys Island, Erie County, Ohio. The property includes a historic pier,[1] known as Koster's Dock, which was constructed in 1889 and extends southeast into Lake Erie for about three hundred feet.

---

1. The submerged land upon which the dock stands is leased from the state of Ohio in the same lease found null and void by the trial court.

The property directly east of the Stevenson property is owned by the Ohio Historical Society; the property directly west of the Stevenson property is owned by James Seeholzer. Lakeshore Road is north of the above properties. Plaintiffs-appellees, William V. Lemley, Garnet M. Lemley and Billy D. Lemley, own property at the corner of Lakeshore Road and Addison on Kelleys Island. Part of this property is a beach area south of Lakeshore Road and adjacent to the property owned by the Ohio Historical Society. If the boundary lines of appellees' property are extended straight out into the lake, Koster's Dock crosses the western boundary of that property.

In 1985, William Stevenson decided to construct a rubble mound breakwall perpendicular to Koster's Dock for the purpose of preventing erosion to the shoreline and for the protection of Koster's Dock.

Before beginning construction, Stevenson was required to (1) obtain a permit from the United States Army Corps of Engineers, Buffalo District, and (2) enter into a lease agreement with the state of Ohio for the submerged land underlying the proposed breakwall. In obtaining the approval for the construction of the breakwall, Stevenson was also required to secure authorization from the United States and Ohio Environmental Protection Agencies, the United States Department of the Interior (United States Department of Fish and Wildlife), and the Ohio Department of Natural Resources. These approvals were obtained.

Appellant filed an application for the lease of submerged lands with the Ohio Department of Administrative Services, in August 1985. Pursuant to the statute, R.C. 123.031, in effect at that time, Stevenson needed the approval, by written resolution, of the Erie County Commissioners, the Director of the Ohio Department of Administrative Services and the Governor of the state of Ohio before the lease could be executed.

Both property owners adjacent to the Stevenson property were notified of the proposed construction. In addition to public notice of the proposed construction given by the United States Army Corps of Engineers, the Ohio Department of Administrative Services provided public notice, by means of publication in the Sandusky Register for four consecutive weeks, of a hearing on Stevenson's application to lease submerged lands. No objections were voiced at that hearing. However, the Ohio Department of Administrative Services did receive four objections from property owners on Kelleys Island after the hearing. A second meeting was scheduled to hear these objections. Only one of the objectors appeared; the state elected to proceed with the submerged land lease.

In November 1986, Stevenson entered into a submerged land lease with the

state of Ohio. The lease itself is for the submerged lands under Koster's Dock [2] and the area for the proposed breakwall. In 1988, Stevenson applied for and subsequently received, in May 1989, approval to change from a rubble mound breakwall to a stone-filled timber crib breakwall. The breakwall, when completed, was to be three hundred seventy feet long with one hundred fifty feet of the breakwall extending to the east. It is undisputed that the breakwall and leased submerged land are four hundred feet away from the shoreline in the open waters of Lake Erie.

Stevenson began construction of the breakwall in May 1989. Appellees first objected to its construction in August 1989. The breakwall was not completed as of the time of trial.

On March 27, 1990, appellees commenced the instant action against appellants, Therese O. Stevenson [3] and William J. Stevenson, the "state of Ohio, Department of Natural Resources" ("state") and the "state of Ohio, Department of Administrative Services." [4]

In a third amended complaint and petition for writ of mandamus, appellees alleged that they were the owners of "certain uplands adjacent to the shoreline of Lake Erie on Kelleys Island, Ohio." Appellees claimed that the submerged land lease entered into by William Stevenson and the Ohio Department of Administrative Services was invalid because Stevenson used the leased land to construct a breakwall which interfered with appellees' littoral rights. Based on these facts, appellees asked the trial court to declare the submerged land lease void and to enjoin its provisions. Appellees also set forth damages claims based, among other things, on trespass and conversion.[5]

The Ohio Historical Society was named a defendant in the third amended complaint for the sole reason that it owned shoreline property adjoining the

---

2. Prior to 1986, the Stevensons apparently did not have a lease for the submerged land under Koster's Dock. Pursuant to R.C. 123.031(D), William Stevenson was also required to obtain the same and it was included in the lease entered into for the purpose of constructing the breakwall.

3. Therese Stevenson is not a party to the submerged land lease.

4. The function of processing applications for submerged land leases was transferred from the Ohio Department of Administrative Services to the Ohio Department of Natural Resources in 1989. Accordingly, the Ohio Department of Administrative Services is not a party to this appeal.

5. This paragraph of our decision in the instant case contains the gist of appellees' complaint. The trial court did not address the propriety of a petition for writ of mandamus or appellees' damages claims. We, therefore, shall not consider these issues. In addition, the Stevensons set forth a cross-claim for indemnification and/or contribution against the state of Ohio. This claim remains pending in the trial court.

Stevenson property. Appellees asked that the society be required to set forth any interest in the "subaqueous lands, littoral rights, and the Submerged Land Lease" which were the subject matter of appellees' suit. The Ohio Historical Society subsequently answered, disclaimed any interest in the breakwall or submerged land lease and asked to be dismissed as a party to this case.

The parties stipulated to a bifurcation of the issues for trial. The issues which are the subject matter of this appeal were tried first. They include (1) whether the submerged land lease between William Stevenson and the state should/could be declared null and void; (2) whether the trial court should/could issue an injunction mandating the removal of the breakwall; and (3) whether the Ohio Historical Society had any claim of right, title or interest in the subject matter of the suit.

A trial to the bench commenced on December 9, 1993 and continued for a half-day on December 10, 1993. On January 12, 1994, the trial court filed an entry stating that the parties agreed to videotape the testimony of the remaining witnesses. The parties were ordered to file all videotape testimony by January 30, 1994. The parties were further ordered to submit written trial briefs pursuant to a court schedule ending on March 10, 1994.

On April 19, 1994, appellants filed a motion to dismiss this cause, with prejudice, for failure to prosecute. Appellants argued that appellees failed to comply with the court's January 12, 1994 order. The court never ruled on this motion and all parties subsequently complied with the January 12, 1994 order.

The trial court entered judgment in favor of appellees, finding that the construction of the breakwall "violated" the Lemleys' littoral rights, and issued a mandatory injunction ordering the Stevensons to remove that portion of the breakwall "easterly of the northeasterly corner of their then existing wharf." The trial court further declared the submerged land lease between William Stevenson and the state was "null and void" and ordered that the lease be "cancelled." Both the Stevensons and the state were "permanently and perpetually enjoined from placing or allowing the placement of any other shore protection devices within the area of Plaintiffs Lemleys' littoral rights." In addition, the lower court enjoined the Stevensons from allowing persons to dock at that portion of the breakwall which was to be removed. Finally, the court determined that the Ohio Historical Society waived any rights to the subject matter of this litigation. The judgment entry contained Civ.R. 54(B) certification language permitting the immediate appeal of that judgment.

Appellants, the Stevensons, appeal that judgment and set forth the following assignments of error:

"1. The Erie County Common Pleas Court erred as a matter of law by invalidating the appellants' submerged land lease obtained from the state of Ohio, as the appellant obtained and entered into the lease in compliance with former R.C. 123.03 and R.C. 123.031.

"2. The Erie County Common Pleas Court erred in ordering the removal of the breakwall constructed by the appellant as the trial court's apparent finding that the breakwall violated appell[ees'] littoral rights and precluded access to navigable waters was against the manifest weight of the evidence.

"3. The Erie County Common Pleas Court erred in creating an undefined 'littoral area' in favor of appellees in the open waters of Lake Erie.

"4. The Erie County Common Pleas Court erred in ordering the removal of the breakwall, constructed by the appellant, William J. Stevenson, as the appellees, by their delay and conduct, were estopped from seeking injunctive relief.

"5. The Erie County Common Pleas Court erred in failing to hear or rule upon appellants' motion to dismiss premised [on] the appellees' failure to prosecute and to comply with the order of that court.

"6. The Erie County Common Pleas Court committed prejudicial error in admitting narrative videotape evidence obtained after trial commenced, in violation of Civil Rule 34, and by means of trespass upon the appellants' real estate."

Appellant, the state, also appeals the trial court's judgment and asks this court to consider the following assigned errors:

"1. Where an agency of the state exercises its authority and discretion in conformity with the language of a statute, a trial court's order which invalidates such exercise of authority and discretion will not be upheld.

"2. The public trust doctrine has been declared the law of Ohio since its organization as a state in 1803; a trial court's finding and orders contrary to the public trust doctrine will not be upheld."

The Coastal States Organization, Inc. filed an *amicus curiae* brief in support of the state in which it argues that each state, as the proprietor and sovereign, has absolute discretion over the use of submerged lands subject to limitation only by the public trust doctrine and a federal navigational servitude.

Because they each address the same issue, we shall consider the Stevensons' first and third assignments of error, both of the state's assignments of error, and the arguments of Coastal States together. The Stevensons' second assignment of error asserting that the trial court's order enjoining the construction of the breakwall was against the manifest weight of the evidence will also be considered.

Although the parties intertwine their arguments, three separate issues are raised in these assignments of error. The first question is whether the common

pleas court had the authority to void a contract between the state and an upland property owner for the lease of submerged land under the open waters of Lake Erie. The second is whether the lower court erred in permanently enjoining the construction of the breakwall for an alleged interference with appellees' littoral rights. The final question involves purported error in the trial court's creation of an undefined "zone" of littoral rights. The pivotal determination in resolving all three of the questions is the nature and extent of littoral rights of property owners on the shores of Lake Erie.

The legal principles necessary to the resolution of the dispositive issues in these assignments are derived from federal law and from state statutory and common law.

■■■ Littoral rights are those ownership rights of a property owner whose land abuts a lake to the use and enjoyment of the waters of and the land underlying the lake. See, generally, 78 American Jurisprudence 2d (1975), Waters, Section 44. Depending on the navigability of a lake, littoral rights vary. *Id.* With regard to Lake Erie, an owner of shoreline or "upland" property has limited littoral rights as dictated by the "public trust" doctrine. See R.C. 123.03, revised and renumbered 1506.10, effective March 15, 1989; *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 38 O.O. 161, 82 N.E.2d 709.

In *State v. Cleveland & Pittsburgh RR. Co.* (1916), 94 Ohio St. 61, 113 N.E. 677, at paragraph three of the syllabus, the Supreme Court of Ohio concluded that the title of land under the waters of Lake Erie within the limits of the state was in the state, which holds the land in trust for the benefit of the public. The court further held that a littoral owner was "entitled to access navigable water on the front of which his land lies, and subject to regulation and control by the federal and state governments, has, for purposes of navigation, the right to wharf out to navigable water." This so-called "public trust" doctrine was later codified as the Fleming Act of 1917, G.C. 3699–a to 3699–9.

In following the Fleming Act, the Supreme Court of Ohio further defined the rights of government and private property owners to the waters and lands of Lake Erie:

"The littoral owners of the upland have no title beyond the natural shore line; they have only the right of access and wharfing out to navigable waters. That right is a property right although not a tangible one and is subject to the superior right of the state as the owner of title in trust for the people of the state, and of the United States with the authority accruing to it by virtue of its exclusive power over interstate commerce." *State ex rel. Squire v. Cleveland, supra,* 150 Ohio St. at 337, 38 O.O. at 174, 82 N.E.2d at 725–726.

The *Squire* court concluded that in a case where the state, by proper legislative action, uses the submerged land of Lake Erie for use in aid of navigation, water commerce or fishery, it takes no right from the upland owner and is not liable, even when access to navigable water is lost or impaired. *Id.* at 338–339, 38 O.O. at 174–175, 82 N.E.2d at 726–727.

The statute, R.C. 123.03, in effect at the time Stevenson applied for a submerged land lease, incorporated the public trust doctrine and stated in material part:

"It is hereby declared that the waters of Lake Erie consisting of the territory within the boundaries of the state, extending from the southerly shore of Lake Erie to the international boundary line between the United States and Canada, together with the soil beneath and their contents, do now and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state, for the public uses to which it may be adapted, subject to the powers of the United States government, to the public rights of navigation, water commerce and fishery, and *further subject to the property rights of littoral owners, including the right to make reasonable use of the waters in front of or flowing past their lands.* Any artificial encroachments by public or private littoral owners, which interfere with the free flow of commerce in navigable channels, whether in the form of wharves, piers, fills, or otherwise, beyond the natural shore line of said waters, not expressly authorized by the general assembly, acting within its powers, or pursuant to section 123.031 of the Revised Code, shall not be considered as having prejudiced the rights of the public in such domain. This section does not limit the right of the state to control, improve, or place aids to navigation in the other navigable waters of the state or the territory formerly covered thereby.

"The department of administrative services is hereby designated as the state agency in all matters pertaining to the care, protection, and enforcement of the state's rights designated in this section.

"Any order of the director of administrative services in any matter pertaining to the care, protection and enforcement of the state's rights in said territory shall be deemed a rule or adjudication within the meaning of sections 119.01 to 119.13 of the Revised Code." (Emphasis added.)

Keeping these principles in mind, we now turn to the specific question of whether the common pleas court had the authority to find the submerged land lease in the instant case "null and void."

We begin by restating that the state as trustee for the water and lands of Lake Erie can, through proper legislation, use the trust for the benefit of the

public. The leasing of submerged lands was and is granted to the state by legislative authority.

R.C. 123.031, as effective July 1, 1985 and at the time the lease between William Stevenson and the state was formulated and executed, controlled the leasing of lands underlying the waters of Lake Erie. The power to enter into a lease for submerged lands in Lake Erie was vested in the Governor upon the recommendation of the Director of the Ohio Department of Administrative Services. Under this statute, the applicant was required, as stated previously, to obtain approval of local and state government agencies. A public hearing, and published notice of that hearing, was mandated under R.C. 123.031(C). Parties to such a hearing were entitled to be heard, to be represented by counsel, and to have process to compel the attendance to witnesses. The director could then, in his discretion, recommend to the Governor that a lease be entered into; the Governor had the final word in approving the recommended lease. *Id.*

■ Reading R.C. 123.03 and 123.031 together indicates that the legislature intended that the littoral rights of upland or shoreline owners be factored into the application process. This is evidenced by the provision for public notice and public hearings so that these owners may have the opportunity to formally present their concerns related to any impairment of littoral rights. Thus, we conclude that where the state follows all of the procedures outlined in the statute in processing a lease for submerged lands to be used for a public benefit, the executed lease cannot be voided for alleged interference with an interested shoreline owner's littoral rights.

■ The purpose for the lease of submerged land in the case before us was to preserve a historic dock or pier and to prevent erosion to the shoreline. This is a use of the trust land for a public benefit. All of the evidence offered at trial established that appellants followed the procedures mandated by R.C. 123.031.[6] Appellees had ample opportunity to raise their concerns during the application procedure. Thus, we find, under the circumstances of this case, that appellees could not attack the validity of the submerged land lease itself. Further, the trial court lacked any authority to invalidate that lease.[7]

---

6. Appellees argue, however, that Ohio Adm.Code 1501–6–01, which defines "littoral rights," was not followed. Ohio Adm.Code 1501–6–01 was not promulgated until after the revision and recodification of R.C. 123.03 and 123.031 to R.C. 1506.10 and 1506.11, as effective March 15, 1989. Accordingly, R.C. 1506.10 and 1506.11 and the regulations promulgated in the furtherance of these statutes are not applicable to the instant case.

7. Even if we had determined that the lower court could invalidate the lease as it related to submerged lands under the breakwall, the court below had no authority to void the lease as it related to submerged lands underlying Koster's Dock.

Additionally, the public trust doctrine and the statutory procedure for the lease of submerged lands in the waters of Lake Erie deprive the trial court of the authority to permanently enjoin the state from leasing submerged land underlying the waters along appellees' shoreline for the purpose of erecting "shore protection devices." Appellees do not own the submerged land. The state holds that land in trust for the benefit of the public. Therefore, the trial court could not, in effect, transfer title of the trust estate to appellees.

We shall next consider the issue of whether the trial court erred in issuing a "mandatory injunction" ordering the Stevensons to remove the breakwall. The disposition of this issue requires a consideration of the third question in this case—whether the trial court erred in creating a zone or area of littoral rights.

In order to obtain an injunction, a party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists. *Ackerman v. Tri-City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 9 O.O.3d 62, 378 N.E.2d 145; *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267, paragraph four of the syllabus. The purpose of an injunction is to prevent a future injury, not to redress past wrongs. *State ex rel. Great Lakes College, Inc. v. Ohio State Med. Bd.* (1972), 29 Ohio St.2d 198, 58 O.O.2d 406, 280 N.E.2d 900. Even though otherwise justified, the issuance of an injunction lies within the trial court's discretion and depends on the facts and circumstances surrounding the particular case. *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595, syllabus.

The only claim set forth by appellees is that the construction of the breakwall resulted in a loss of their littoral rights. As stated previously, littoral rights are those intangible rights accruing to the benefit of an owner of property abutting a lake. Those rights are limited to a reasonable use of the waters in front of or flowing past their lands and to the right of access to navigable water. Thus, appellees were entitled to an injunction only upon a demonstration of irreparable harm to their reasonable use of the waters fronting their property and/or their right to access the navigable waters of Lake Erie.

Appellees completely failed to demonstrate, by clear and convincing evidence, that they were entitled to an injunction. They provided no evidence of an interference with a reasonable use of the water in front of their property or an inability to access navigable waters.

The first witness at trial, Daniel E. Hartung, Jr., a surveyor, testified that he performed a survey for appellees in 1989 and updated that survey in 1993. Appellees' property line on the shores of lake Erie was two hundred fifty feet long. By drawing the side boundary lines of appellees' property straight out four

hundred feet to the breakwall, Hartung determined that prior to its construction, appellees had two hundred feet of open water in front of their property along the property line and that after the construction, appellees had sixty-three feet of open water in front of their property. Nonetheless, Hartung admitted upon cross-examination that the western boundary of appellees' property intersected with Koster's Dock some two hundred feet from the shoreline.

In undisputed testimony, Jared P. LeFavour, Director of the Ohio Department of Natural Resources submerged land lease program, testified that the breakwall occupies the navigable waters of Lake Erie. He further stated that the break-wall would have no effect on appellees' ability to obtain a lease to wharf out to the navigable waters of Lake Erie.

Testimony from each of the appellees disclosed that they purchased their property on Kelleys Island in 1979. Each stated that there are no docks or marinas or wharves on their Kelleys Island property and that they have never applied for a permit or lease in order to construct any of the same. In addition, Garnet and Billy Lemley testified that boats freely came and went within the area between the breakwall and their shoreline during the summer of 1989. While Billy Lemley speculated that deep draft vessels might not be able to dock at his property due to the breakwall, he offered no evidence of this assertion.

Based on the foregoing, appellees failed to present clear and convincing evidence of an irreparable harm sufficient to support the grant of injunctive relief.

Moreover, the trial court abused its discretion in fashioning the equitable remedy of injunction. It apparently created a zone of littoral rights by extending the side boundaries of appellees' property to an undesignated distance in Lake Erie. The trial court seemingly relied on this court's decision in *Thomas v. Sanders* (1979), 65 Ohio App.2d 5, 19 O.O.3d 3, 413 N.E.2d 1224, as authority for this remedy.

In discussing littoral rights in *Thomas* at 14, 19 O.O.3d at 9–10, 413 N.E.2d at 1231, this court recognized that the land under the waters of Lake Erie is held in trust by the state for the benefit of the public and stated:

"Traditional rights of the public in these waters are the rights of navigation and of fishing, although more recently navigability has been held to include recreational as well as commercial use. *State, ex rel. Brown, v. Newport Concrete Co.* (1975), 44 Ohio App.2d 121 [73 O.O.2d 124, 336 N.E.2d 453]. It has been established that the littoral owner of property bordering navigable lakes is held to have an intangible right to make use of those navigable waters by building wharfs in the aid of navigation and commerce, but for no other purpose, and provided the exercise of this right does not interfere with the public rights.

*State, ex rel. Squire, v. Cleveland* (1948), 150 Ohio St. 303 [38 O.O. 161, 82 N.E.2d 709]. Furthermore, the case of *State v. Cleveland & Pittsburgh Rd. Co., supra,* held that whatever the littoral owner does is done with knowledge on his part that the title to the subsoil is held by the state, as trustee for the public, and nothing can be done which will destroy or weaken the rights of the beneficiary's trust estate."

This court concluded that trusts connected with public property, such as lands under navigable waters, cannot be placed entirely beyond the direction and control of the state. *Id.,* quoting *Illinois Cent. RR. Co. v. Illinois* (1892), 146 U.S. 387, 454, 13 S.Ct. 110, 118, 36 L.Ed. 1018, 1043. Therefore, we determined that a littoral owner has the right to wharf out to navigable waters in aid of navigation only in the area of the projected boundaries of his or her waterfront property. *Thomas,* 65 Ohio App.2d at 15–16, 19 O.O.3d at 10–11, 413 N.E.2d at 1231–1232.

■ The holding in *Thomas* is neither new law nor the grant of an unfettered right to a shoreline property owner. Rather, it is merely a restatement of the fact that littoral rights are restricted to that area between a shoreline owner's side boundary lines. Thus, even in following *Thomas,* appellees' littoral right, if exercised, is limited to the right to wharf out to navigable water in the area between their side boundary lines and is still subject to the state's control as a trustee of the waters and underlying lands of Lake Erie.

■ In the case before us, appellees failed to present any evidence of the point of navigability in front of their shoreline property. To reiterate, Garnet and Billy Lemley testified that boats come inside the breakwall and can reach their beach. In fact, Billy Lemley stated that the water was fourteen feet deep in front of his property. Furthermore, the indefinite littoral zone or area set by the trial court does not contemplate the curvature of the shoreline of the parties' properties and, therefore, evidently encompasses a portion of Koster's Dock. If applied to the properties of appellees, the Stevensons and the Ohio Historical Society, the projected boundary lines intersect in Lake Erie creating overlapping littoral zones or areas. Consequently, we find that the trial court's judgment, in setting forth an undefined, unsupported littoral "zone," [8] was unreasonable, arbitrary and unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

---

8. Although it is not applicable to this case, Ohio Adm.Code 1501–6–01(L) now defines a "littoral zone" as the "indefinite zone between the shoreline extending lakeward to the furthermost line where waves begin to break."

Accordingly, the Stevensons' first, second and third assignments of error are found well taken. The state's first and second assignments of error are found well taken.

■■■ Due to our disposition of the Stevensons' first, second and third assignments of error, we need not reach the merits of their fourth, fifth and sixth[9] assignments of error.

The judgment of the Erie County Court of Common pleas is reversed and vacated. Pursuant to App.R. 12(B), judgment is entered in favor of the state on appellees' declaratory judgment action and request for injunctive relief. Pursuant to App.R. 12(C), judgment is entered in favor of William and Therese Stevenson on appellees' claim for injunctive relief. This case is remanded to the trial court for further proceedings not inconsistent with this judgment. Costs of this appeal, as defined in App.R. 24, are assessed to appellees.

*Judgment accordingly.*

GLASSER, MELVIN L. RESNICK and SHERCK, JJ., concur.

---

9. We note, however, that the trial court abused its discretion in admitting the videotape prepared by Billy Lemley. First, and assuming that discovery was permissible at mid-trial, the requisites of Civ.R. 34 were not followed. Second, the videotape and narrative testimony of Billy Lemley were not relevant to the issues before the court. Evid.R. 401. Third, the evidence was cumulative because photographs of the breakwall and testimony were already in evidence. Evid.R. 403(A). Finally, the probative value of the videotape and Lemley's testimony was outweighed by the danger of unfair prejudice because it confused the issues by focusing on the fact that boats were docked at the breakwall and the aesthetics of the breakwall. Evid.R. 403(A).