HACK et al., Appellees,

v.

SAND BEACH CONSERVANCY DISTRICT et al., Appellants.

[Cite as *Hack v. Sand Beach Conservancy Dist.*, 176 Ohio App.3d 309, 2008-Ohio-1858.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–07–021.

Decided April 18, 2008.

Joseph P. Jordan, for appellees.

David J. Simko and William T. Maloney, for appellants.

SINGER, Judge.

{¶ 1} Appellants appeal a permanent injunction issued by the Ottawa County Court of Common Pleas, barring completion of a beach erosion project. For the reasons that follow, the judgment is reversed and the injunction vacated.

{¶ 2} Sand Beach is a community of approximately 120 homes located on the southern shore of Lake Erie in western Ottawa County, Ohio. Appellants are the Sand Beach Conservancy District, a political subdivision formed pursuant to R.C. Chapter 6101, and its board members, individually.[1] The organization's statutory mission includes "[p]reventing floods" and "[a]rresting erosion along the Ohio shore line of Lake Erie." R.C. 6101.04(A) and (I). To this end, the directors of the conservancy district are expressly authorized to conduct "works and improvements considered necessary to accomplish the[se] purposes." R.C. 6101.15(C).

{¶ 3} In 2000, appellants applied for and obtained permission from the United States Army Corps of Engineers to install eight modular groins extending from and perpendicular to the Sand Beach shore into the lake. A groin is "a rigid structure built out from a shore to protect the shore from erosion, to trap sand, or to direct a current." Merriam–Webster's Collegiate Dictionary (10th Ed. 1996) 513–514.

{¶ 4} The groins at issue are constructed of modular precast concrete and extend 52 feet into the lake. Two similar structures were already in place prior to the 2000 application. The stated purpose of the structures was to restore beach sand. The modules were to be placed wholly on underwater property leased to appellants by the state of Ohio. Necessary approvals were also obtained

---

1. Conservancy Board President David L. Matzinger, Vice President Joe Abele, and board member Larry Heintz.

from the Ohio Department of Natural Resources and the Ohio Environmental Protection Agency. By 2006, six of the eight groins had been installed.

{¶ 5} On August 26, 2006, appellees, property owners on the portion of Sand Beach where the groins were to be built,[2] filed a complaint seeking to enjoin construction of the remaining two groins. Appellees challenged the efficacy of the groin design, asserting that far from building a beach, the groins that had already been installed resulted in beach erosion. Appellees claimed that construction of the remaining groins would cause loss of beach in front of their homes, damage the lake bottom close to the shore, reduce their access to the lake, and expose them and their children to potential personal injury.

{¶ 6} Following a two-day hearing in September 2006, the trial court issued a preliminary injunction barring completion of the groin structures. A hearing on a permanent injunction was held during the summer of 2007, following which the court granted appellees' application to permanently bar construction of the remaining two groins. From this order, appellants now bring this appeal. Appellants set forth the following six assignments of error:

{¶ 7} *"Assignment of Error # 1:* The lower court lacked authority to interfere with the rights granted to a Conservancy District under a Submerged Land Leased from a State of Ohio.

{¶ 8} *"Assignment of Error # 2:* The lower court lacked authority to substitute its opinion for the decision of a political subdivision acting on a matter within the normal limits of its operating authority.

{¶ 9} *"Assignment of Error # 3:* The lower court erred in granting an injunction against a political subdivision without requiring the Plaintiffs to establish some right or cause of action as a condition to consideration of injunctive relief.

{¶ 10} *"Assignment of Error # 4:* The lower court erred in failing to dismiss the action at the conclusion of the Plaintiff's case.

{¶ 11} *"Assignment of Error # 5:* The lower court erred in finding that the Plaintiffs had met their burden of proving immediate and irreparable injury as a condition to the grant of injunctive relief.

{¶ 12} *"Assignment of Error # 6:* The lower court abused its discretion in granting a permanent injunction against the Appellees."

---

2. Kathleen Sprenger Hack, Loretta Sprenger Coil, John Gallagher Sprenger, Albert Joseph Sprenger Jr., Schlageter Family, L.L.C., James David Schlageter, Joseph Sprenger Jr., and Schlageter Family, L.L.C. members. The complaint also included a derivative action asserted on behalf of the Sand Beach Association, Inc.

### I. Authority of the Court

■ {¶ 13} In their first two assignments of error, appellants maintain that a common pleas court is simply without authority to interfere with either the decision of the state to grant a submerged land lease or with a conservancy district acting within the scope of its statutory mission. Appellants direct our attention to this court's decision in *Lemley v. Stevenson* (1995), 104 Ohio App.3d 126, 661 N.E.2d 237, in support of both assignments of error. *Lemley*, appellants insist, holds that the elaborate regulatory safeguards antecedent to the grant of a submerged land lease supersede other procedures and divest judicial authority relative to such a lease.

{¶ 14} Appellees respond that *Lemley* is distinguishable because that case dealt with the possible infringement of the littoral rights of a property owner, whereas the present matter relates to the effect of a submerged land lease to the enjoyment of on-shore property.

{¶ 15} Lemley and Stevenson were neighboring property owners on the southern shore of Kelleys Island in Lake Erie. In 1985, Stevenson decided to construct an off-shore breakwall to prevent shoreline erosion. Stevenson obtained a permit for the structure from the Army Corps of Engineers and authorization from the Ohio Environmental Protection Agency, the United States Environmental Protection Agency, the United States Department of Interior, and the Ohio Department of Natural Resources. Stevenson also obtained a submerged land lease from the state of Ohio. Construction began in May 1989.

■ {¶ 16} In March 1990, Lemley sued to stop construction of the breakwall, alleging that it interfered with his littoral rights.[3] In 1994, the Erie County Court of Common Pleas found that the breakwall violated Lemley's littoral rights, issued a mandatory injunction ordering the breakwall removed, and declared the submerged land lease void.

{¶ 17} On review, this court reversed the trial court's order, concluding that "where the state follows all of the procedures outlined in the statute in processing a lease for submerged lands to be used for a public benefit, the executed lease cannot be voided for alleged interference with an interested shoreline owner's littoral rights." Id. at 135, 661 N.E.2d 237. We held that because Lemley had "ample opportunity" to assert his concerns during the application process and failed to do so, he could not later attack the validity of the lease itself. "Further,

---

**3.** Littoral rights are those ownership rights of a property owner whose land abuts a lake to the use and enjoyment of the waters and the land underlying the lake. *Lemley*, 104 Ohio App.3d at 133, 661 N.E.2d 237. Littoral rights to submerged land under Lake Erie are statutorily circumscribed. See R.C. 1506.01; *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 38 O.O. 161, 82 N.E.2d 709.

the trial court lacked any authority to invalidate that lease." Id. Moreover, because Lemley's only claim of harm was a loss of littoral rights, and "[t]hose rights are limited to a reasonable use of the waters in front of or flowing past their lands and to the right of access to navigable water," id. at 136, 661 N.E.2d 237, absent evidence of interference with those limited rights, no injunction should issue.

{¶ 18} *Lemley* is inapplicable in this matter. The case does not support appellants' assertion that the state's issuance of a submerged land lease constitutes a blanket preemption of a common pleas court's authority to grant an injunction. At the hearings on the preliminary and permanent injunctions, appellees claimed, and the trial court found, that the installation of the groins would interfere with appellees' historic ability to safely use the beach for recreation and would be aesthetically detrimental to the beach, causing a decline in property values. No finding relative to littoral rights was made. Accordingly, appellants' first assignment of error is not well taken.

{¶ 19} In their second assignment of error, appellants contend that the court was without authority to issue an injunction because of the deference due political subdivisions in the exercise of statutory authority. Appellants note that in this matter, the trial court expressly observed that the conservancy district acted within its authority in seeking permits to construct groins at Sand Beach. This conclusion alone, appellants insist, entitles them to avoid being second guessed by the court.

{¶ 20} Although rare and certainly subject to cautionary exercise, injunctions have been entertained, and in some instances granted, against political subdivisions and public officials. See *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496; *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595. One court has expressly held that "the court of common pleas has jurisdiction to hear actions to enjoin potentially harmful decisions of a conservancy district." *Mifflin Group v. Muskingum Watershed Conservancy Dist.* (1998), 129 Ohio App.3d 495, 499, 718 N.E.2d 466.

{¶ 21} Accordingly, while we concur with the caveat articulated in *Garono* at 173, 524 N.E.2d 496 that "[a] court should exercise great caution regarding the granting of an injunction which would interfere with another branch of government," we find no authority that would bar such an action. Consequently, appellants' second assignment of error is not well taken.

## II. Underlying Cause of Action

{¶ 22} In their third assignment of error, appellants argue that an injunction is a remedy only and may not be entered without demonstration of a right to relief under the applicable substantive law.

{¶ 23} "An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot. * * * The grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Garono*, 37 Ohio St.3d at 173, 524 N.E.2d 496. "In order to obtain an injunction, a party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists." *Lemley*, 104 Ohio App.3d at 136, 661 N.E.2d 237, citing *Ackerman v. Tri–City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 56, 9 O.O.3d 62, 378 N.E.2d 145.

{¶ 24} In support of their argument, appellants cite cases in which injunctions have resulted from a contractual breach or tortious conduct. Clearly, those causes of action may form the basis for seeking an injunction. The gravamen of the remedy, however, is that a defendant is about to commit an act that will produce immediate and irreparable harm for which no adequate legal remedy exists. It is a suit in equity, which requires the court to balance the benefits and burdens that accrue to each party. *Miller v. W. Carrollton* (1993), 91 Ohio App.3d 291, 297, 632 N.E.2d 582.

{¶ 25} In this matter, appellees alleged in their complaint that appellants were about to act in a manner that would deprive appellees of the enjoyment of their property. This is a sufficient cause of action to permit the matter to proceed. Accordingly, appellants' third assignment of error is not well taken.

### III. Dismissal on Motion

{¶ 26} At the conclusion of appellees' case in chief, appellants moved for a directed verdict. Without comment, the trial court denied the motion. On appeal, appellants insist that this denial was erroneous. Appellants concede that a motion for a directed verdict was technically the improper form to seek dismissal during a bench trial, but suggest that the motion should have been construed as a request for an involuntary dismissal pursuant to Civ.R. 41(B)(2) and should have been granted.

{¶ 27} Appellees respond that the motion was in improper form and was properly denied. Alternatively, appellees maintain that the trial court acted in conformity with Civ.R. 41(B) in issuing its denial of the motion.

{¶ 28} Civ.R. 41(B)(2) provides:

{¶ 29} "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant * * * may

move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

{¶ 30} "In ruling upon a Civ.R. 41(B)(2) motion, it is the function of the trial court to review the evidence and the law. * * * In this respect, the trial court is not required to construe the evidence in favor of the non-moving party, but rather may weigh the evidence and render judgment. * * * Where plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court *may* dismiss the case." (Emphasic sic.) *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267.

{¶ 31} The word "may" used in the rule ordinarily constitutes a word of permission, as opposed to a command. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. This means that it is within the sound discretion of the court as to whether the case should be dismissed or judgment reserved until the close of all evidence. *Levine,* 48 Ohio App.3d 24, 548 N.E.2d 267. Decisions within the discretion of the court will not be reversed absent an abuse of discretion. An abuse of discretion is more that a lapse of judgment or a mistake of law; the term connotes that the court's attitude is arbitrary, unreasonable, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 32} In this matter, we cannot say that the court abused its discretion in denying appellants' motion. Accordingly, appellants' fourth assignment of error is not well taken.

### IV. Weight of Evidence

{¶ 33} In their fifth assignment of error, appellants contend that the trial court incorrectly found that appellees had presented clear and convincing evidence of immediate and irreparable harm antecedent to the issuance of a permanent injunction.

{¶ 34} The trial court found that damage to beach and property values resultant from the installation of the groins "is highly likely to occur." Appellants insist that this finding is unsustainable from the evidence presented. Appellants note that the only expert testimony in the case offered was that of coastal engineer Christopher Andrassy, who unequivocally stated that installation of the groins would not harm adjacent beach property. They argue that the testimony of some residents of observed beach deterioration is anecdotal and directly contradicted by the testimony of other residents and engineer Andrassy. Appellants maintain that there can be no "irreparable" harm because there was

testimony that the groins could be removed in as little as two days. Moreover, according to appellants, the court's finding of potential "harm" appears premised on consideration of the effect of the groins on only a small subset of the community, as opposed to the flood-control advantages obtained for all residents of Sand Beach. Finally, appellants argue, any effect the groins have on the beach—negative or positive—implicates no property of appellees, as the state owns the submerged land to the natural shore line of the lake.

{¶ 35} Much of the testimony received in the four days of hearings that led to the issuance of this injunction was about the efficiency or relative inefficiency of these groins. This focus was misplaced. It is undisputed that throughout the administrative proceedings that led to the issuance of the permits to construct these groins and the lease for the submerged lands, there were multiple opportunities to protest these structures. Appellees neglected to avail themselves of those administrative opportunities to be heard or the administrative appeal process. Consequently, they cannot now be heard to claim that they are without remedy, when they did not use a remedy that was available to them. See *Lemley,* 104 Ohio App.3d at 135, 661 N.E.2d 237. Appellees thus waived any challenge to the efficacy of the proposed groin structures.

{¶ 36} With respect to the issue of damages to appellees' property values, there is an adequate remedy for damages through a claim with the conservancy court. R.C. 6101.74; *Mifflin Group,* 129 Ohio App.3d at 499, 718 N.E.2d 466; see also *Lucas Cty. Commrs. v. Mockensturm* (1997), 119 Ohio App.3d 223, 226–227, 695 N.E.2d 15.

{¶ 37} The only remaining rationale that the trial court adopted for issuing the injunction was a change in beach aesthetics and a potential danger for persons using the beach. It should be noted that beach aesthetics were expressly linked with a diminution of property values for which we have already stated there is a remedy.

{¶ 38} Concerning new danger on the beach, a resident testified that she feared that the children who played on the beach might fall while attempting to walk on the groins or that someone riding a jet ski might hit one. These fears are, at best, speculative and seem belied by the existence of the same groins in eight other places on the same beach and expert testimony that literally hundreds of other groins are in place on the shore of Lake Erie. Consequently, on the only remaining issue upon which the trial court could have properly relied to find irreparable damage, there was a lack of clear and convincing evidence. Absent such evidence, the court abused its discretion in causing the permanent injunction to issue. Accordingly, appellants' fifth assignment is well taken.

{¶ 39} Appellants' sixth assignment of error is moot.

{¶ 40} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is reversed. The permanent injunction issued by the court is vacated.

Judgment reversed.

Skow and Osowik, JJ., concur.