DECISION AND JUDGMENT
{¶ 1} Appellant, e² Solutions ("ES"), appeals the denial of a preliminary injunction by the Lucas County Court of Common Pleas in a dispute with two former employees and their present employer. The former employees are appellees, Dave Hoelzer and Paul Drinkwater. Their new employer is appellee, Wasdworth Slawson NW ("Wadsworth Slawson").
 {¶ 2} ES sought an injunction to enforce the terms of an agreement with the former employees not to compete and to prevent misappropriation of confidential *Page 2 
information and trade secrets. The trial court denied a preliminary injunction in a judgment entry filed on May 28, 2008. ES appeals the judgment to this court. It makes two assignments of error on appeal:
 {¶ 3} "1. The trial court abused its discretion in denying E² Solutions' motion for preliminary injunction to enforce Hoelzer's and Drinkwater's non-solicitation agreements.
 {¶ 4} "2. The trial court abused its discretion in denying E² Solutions' motion for preliminary injunction to prevent Defendants' misappropriation of E² Solutions' trade secrets."
 {¶ 5} From 1971 until November 2007, Robert J. Meehan, Jr. held a franchise with The Trane Company granting him an exclusive right to distribute Trane's heating, ventilating, and air conditioning equipment ("HVAC") in Northwest Ohio. Meehan operated the franchise through a corporation of which he is the sole shareholder and president. The corporation has operated under the name of e² Solutions since September 2007. It had previously operated under the name Toledo Trane Service, Inc.
 {¶ 6} According to Meehan, prior to November 2007, the company operated under two divisions. One division involved sales of Trane HVAC equipment for installation in new buildings or significant additions. The other division involved sales of equipment for existing buildings and service.
 {¶ 7} Meehan testified that, immediately before Trane terminated its franchise, 90 percent of equipment sales were for Trane equipment. At that time, the Trane franchise accounted for more than one-half of the company's revenues and service accounted for *Page 3 
one-third. After Trane cancelled its franchise, ES also lost the franchise for Andover controls. After the terminations, ES held no other franchises with any nationally recognized HVAC equipment manufacturers.
 {¶ 8} In August 2007, Trane notified appellant that it was terminating the franchise agreement because an audit of company records disclosed what they considered to be a "pervasive pattern of deception to cheat Trane" out of "well over $1,000,000" that they claimed had been retained by appellant and were due Trane.[1] Trane brought suit against Meehan and appellant in the United States District Court for the Northern District of Ohio in the case American Standard, Inc. v. Meehan, case No. 3:07CV92377, to recoup the claimed loss.
 {¶ 9} The district court denied Meehan's and appellant's motions for a TRO and preliminary injunction to prevent termination of the franchise agreement. Robert Meehan testified, in these proceedings, that an affidavit signed by him and submitted in the federal action, stated that the impact of termination of the Trane franchise would be so severe that most, if not all, of his employees would immediately or soon lose their employment were the franchise terminated.
 {¶ 10} On November 1, 2007, the Sixth Circuit Court of Appeals denied a subsequent motion to enjoin Trane from terminating the franchise agreement pending appeal to that court. After the ruling, Trane immediately proceeded to terminate the *Page 4 
franchise on November 1, 2007. On November 2, 2007, Trane also publicly announced that it was opening a new facility, including a parts center showroom in Holland, Ohio to serve customers in northwest Ohio and to meet "sales, service, building controls, and parts needs."[2]
 {¶ 11} Hoelzer was the sales manager and a salesman for the existing building and service side of the business. Drinkwater worked for Hoelzer as a salesman in the division. After Trane terminated its franchise with Meehan, Hoelzer and Drinkwater resigned their employment with ES and began employment with Wadsworth Slawson. On November 19, 2007, appellant filed this litigation against Hoelzer, Drinkwater, and Wadsworth Slawson seeking equitable relief and monetary damages.
 {¶ 12} Decisions of trial courts to grant or deny motions for preliminary injunctions are subject to review on appeal under an abuse of discretion standard. Garono v. State (1988), 37 Ohio St.3d 171, 173;Neal v. Manor, 6th Dist. No. L-07-1055, 2008-Ohio-257, ¶ 12. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 13} Under Assignment of Error No. 1, appellant argues that the trial court abused its discretion when it denied appellant's motion for a preliminary injunction against Hoelzer and Drinkwater to secure compliance with the agreement not to compete. *Page 5 
 {¶ 14} Agreements restricting a former employee from competing with a former employer "will be enforced under the rule of reasonableness to the extent that the restraint (1) is required to protect the legitimate interests of the employer, (2) does not impose an undue hardship on the employee, and (3) is not injurious to the public. Raimonde v.Van Vlerah (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, paragraphs one and two of the syllabus; Rogers v. Runfola Assoc,Inc. (1991), 57 Ohio St.3d 5, 8, 565 N.E.2d 540, 543-544." Restivo v.Fifth Third Bank of Northwestern Ohio (1996), 113 Ohio App.3d 516, 519.
 {¶ 15} To secure enforcement through a preliminary injunction, a plaintiff must establish "`(1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction.' IslandExpress Boat Lines Ltd v. Put-in-Bay Boat Line Co., 6th Dist. No. E-06-002, 2007-Ohio-1041, ¶ 92, quoting Procter Gamble Co. v.Stoneham (2000), 140 Ohio App.3d 260, 267; see, also, Civ. R. 65(B) and R.C. 2727.02." Neal v. Manor at ¶ 11.
 {¶ 16} The trial court denied the preliminary injunction on two grounds: first that appellant had failed to demonstrate that it would suffer irreparable harm if the injunction did not issue and, secondly, that it also failed to prove that it would likely succeed on the merits. *Page 6 
 {¶ 17} The facts demonstrate that proof of any irreparable harm or business loss caused by appellees would be very difficult, particularly in view of the substantial damage to the business by loss of the Trane franchise and damage to its reputation by allegations by Trane of fraud. The trial court noted that the allegations of fraud were "well known in the business community." The trial court concluded: "The evidence thus would suggest that, if Plaintiff has suffered a loss of business, Trane's action in canceling the franchise are just as likely, if not more likely, to be the cause of such loss of business."
 {¶ 18} The trial court also found that the evidence against Hoelzer and Drinkwater was very limited:
 {¶ 19} "While Plaintiff maintains that Hoelzer and Drinkwater have succeeded in taking some customers from ES, the only examples it has given is that Hoelzer approached two customers about keeping their business with him if he went with WS [Wadsworth Slawson] and that within three weeks after leaving ES, Hoelzer and Drinkwater had prepared bids for two customers. But Plaintiffs have submitted no evidence whatsoever that Defendants have, in fact, taken any contracts away from Plaintiffs or that Hoelzer and Drinkwater have disclosed or threatened to disclose Plaintiffs trade secrets."
 {¶ 20} As in Restivo v. Fifth Third Bank of Northwestern Ohio, the former employer here, ES, failed to identify any damages or irreparable harm it suffered from work by former employees for a competitor and unable to identify any customer who *Page 7 
transferred their business from ES as a result of the actions of the former employees. See Restivo v. Fifth Third Bank of NorthwesternOhio at 521.
 {¶ 21} Under these facts, we conclude that the trial court did not abuse its discretion in denying a preliminary injunction. The trial court reasonably concluded that appellant failed to establish by clear and convincing evidence that it would suffer irreparable harm if the injunction did not issue and that appellant was likely to succeed on the merits.
 {¶ 22} Appellees have also argued that the trial court's judgment is supported on the alternative bases that ES is barred from seeking equitable relief under the doctrine of unclean hands and that the covenant not to compete is unenforceable because the fraud by ES irreparably damaged the employment relationship. Both these arguments presume, however, that the record includes evidence that the allegations against ES by Trane of fraud are true. There is no evidence in the record, however, as to the truth or falsity of Trane's claims.
 {¶ 23} Assignment of Error No. 1 is not well-taken.
 {¶ 24} Under Assignment of Error No. 2, appellant argues that the trial court abused its discretion in denying a preliminary injunction to prevent misappropriation of trade secrets. Robert Meehan testified that neither Hoelzer nor Drinkwater signed confidentiality agreements. Evidence was lacking to show that Hoelzer or Drinkwater disclosed or threatened to disclose trade secrets. *Page 8 
 {¶ 25} ES argues that proof of disclosure or threatened disclosure of trade secrets is not required, citing the decision of the First District Court of Appeals in Procter Gamble Co. v. Stoneham (2000),140 Ohio App.3d 260. Under the analysis in Procter Gamble Co. v. Stoneham, "a threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor * * * in a position that is substantially similar to the position held during the former employment." Id. at 279.
 {¶ 26} In the subsequent decision of Aero Fulfillment Services, Inc.v. Tartar, 1st Dist. No. C-060071, 2007-Ohio-174, the First District Court of Appeals distinguished Stoneman based upon the nature of the knowledge held by the former employee and the likelihood of irreparable harm presented under the facts:
 {¶ 27} "The Stoneham decision was product-driven. Therein we noted that through the years Stoneham had acquired extensive product-specific knowledge. He knew, among other things, the product areas in which P G would expand or reduce its business; product-sensitive information concerning which types of advertising were most successful; which line of products would optimize profit; the products that sold best in the foreign markets; information concerning development of new haircare products; which products were closest to market and when and where they would be launched; the strengths and weaknesses of the products; the strengths and weaknesses of the company's scientific backup for its claims about the products; the price for the new products, and the *Page 9 
targeted profits; which products would be relaunched; the perceived weaknesses of the relaunched products; the changes made or to be made in the products, and the anticipated costs of relaunch. We note that this information was tangible, highly technical, and specific. InStoneham the likelihood of irreparable harm was immediately apparent and concrete." Id. at ¶ 29.
 {¶ 28} In Aero, the First District Court of Appeals distinguishedStoneham and affirmed denial of a preliminary injunction in a covenant not to compete case based upon lack of irreparable harm to the employer if the injunction were denied. One distinguishing factor identified by the court in Aero was the existence of a different level of risk of irreparable harm faced where the former employee's knowledge was product related (as in Stoneham) as opposed to knowledge of the service industry (Aero). Id. at ¶ 30. The Aero work involved a covenant not to compete in the fulfillment industry — database services, digital services, internet services, mail processing, and telemarketing. The court also recognized that marketing information in the case was time sensitive and became stale quickly. Id. at ¶ 31-32.
 {¶ 29} Appellees argue that any knowledge held by Hoelzer or Drinkwater concerned company practices in service operations before the termination of the Trane franchise and that ES's service business has substantially changed because of the Trane termination and dispute. We agree.
 {¶ 30} Hoelzer's and Drinkwater's knowledge related to service business and existing building sales when ES was a distributor for Trane products and TAC Andover *Page 10 
controls. Before the franchise termination, as a distributor, ES would make equipment sales on behalf of Trane directly to the customer. Trane paid ES a commission. ES would never take title to the equipment and ES would not tie up its own capital in payment for Trane parts or equipment.
 {¶ 31} Now the majority of service work remains work on Trane equipment. ES, however, no longer holds the status of a Trane distributor to assist in securing sales of service contracts. It purchases parts and equipment for Trane products used in service just like any contractor in town. The record lacks evidence to indicate that the same marketing strategy or cost structure applied to the service and existing building sales part of the ES business after termination of the franchise.
 {¶ 32} "* * * [A] plaintiff is required to establish actual irreparable harm or the existence of an actual threat of such injury when the equitable remedy of an injunction is sought. Ohio Urology, Inc.v. Poll (1991), 72 Ohio App.3d 446, 594 N.E.2d 1027." Restivo v. FifthThird Bank of Northwestern Ohio at 519. In such a case, proof of irreparable harm must be by clear and convincing evidence. Hack v. SandBeach Conservancy Dist., 176 Ohio App.3d 309, 2008-Ohio-1858, ¶ 23;The Hess Hardware Co. v. Beschman (Apr. 7, 1995), 6th Dist. No. H-94-18. Such proof is lacking here. This case does not present tangible, highly technical or specific evidence of trade secrets held by either Hoelzer or Drinkwater upon which it could be said that the likelihood of irreparable harm was immediate and concrete as considered by the First District Court of Appeals in Stoneham. *Page 11 
 {¶ 33} Under these facts, we conclude that the trial court did not abuse its discretion in denying the preliminary injunction to enjoin appellees from misappropriating ES trade secrets. The record supports a conclusion that appellant failed to establish irreparable harm should the injunction not issue and also failed to establish that it would likely succeed on the merits in a trade secrets claim against appellants.
 {¶ 34} We conclude that appellant's Assignment of Error No. 2 is not well-taken.
 {¶ 35} Upon due consideration, we find that appellant was not prejudiced or prevented from having a fair hearing, and the judgment of the Lucas County Court of Common Pleas denying a preliminary injunction is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 12 
Mark L. Pietrykowski, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] The assertion is contained in an August 2, 2007 letter from John Conover, President of Americas Trane Commercial Systems to Robert Meehan. No evidence was presented in the trial court on whether the allegations of fraudulent conduct are true.
[2] Notice of Opening of New Trane Facility, dated November 2, 2007 by Terence P. Dugan, Trane District Manager. *Page 1