[Cite as *Litigation Mgt., Inc. v. Bourgeois*, 2011-Ohio-2794.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No. 95730

# LITIGATION MANAGEMENT, INC.

PLAINTIFF-APPELLANT

vs.

# JEAN BOURGEOIS, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-655349

**BEFORE:**  Stewart, J., Kilbane, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**  June 9, 2011

## ATTORNEYS FOR APPELLANT

James B. Niehaus
Thomas J. Piatak
Adam J. Russ
Frantz Ward LLP
127 Public Square
2500 Key Center
Cleveland, OH   44114

Michelle Pierce Stronczer
Pierce Stronczer Law, LLC
6900 S. Edgerton Road, Suite 108
Cleveland, OH   44141-3193

## ATTORNEYS FOR APPELLEES

Michele Morris
430 White Pond Drive, Suite 500
Akron, OH   44320

Thomas F. Haskins, Jr.
430 White Pond Drive, Suite 200
Akron, OH   44320

William S. Pidcock
Robertson & Pidcock, LLC
236 Third Street, SW
Canton, OH   44702

MELODY J. STEWART, J.:

{¶ 1} Plaintiff-appellant, Litigation Management, Inc. ("LMI"), prevailed at trial on its claim for damages caused by defendants-appellees, Jean Bourgeois, Excelas, LLC, and a number of Excelas employees, all of whom were former LMI employees who breached the terms of nondisclosure and trade secrets agreements they made with LMI prior to founding Excelas, a direct competitor to LMI. In addition to damages, LMI sought a permanent injunction to enforce prospectively the terms of the noncompetition and trade secrets agreements. The court denied the injunction, finding that LMI failed to establish that it had suffered "irreparable" damages in light of the damage award. LMI argues that the court abused its discretion by finding that an injunction for prospective relief was barred when damages for the breach had been awarded.

I

{¶ 2} The underlying facts are largely immaterial to the issues raised in this appeal, so we state them in summary form. LMI is a company providing litigation support specializing in analyzing medical records. It employs a staff of employees called "medical analysts" who review medical records. The lead defendant, Bourgeois, was LMI's chief operating officer. Bourgeois and the other defendants were all subject to noncompetition, nonsolicitation, and confidentiality agreements. Bourgeois was terminated in May 2003. In December 2004, she founded Excelas as a direct competitor to LMI and, in the words of the court, set up

business "almost literally across the street." She recruited the remaining defendants from LMI, all of whom were medical analysts, to work for Excelas and perform the same function.

{¶ 3} LMI brought claims against the individual defendants for breach of the noncompetition, nonsolicitation, and confidentiality agreements; a claim against Excelas for intentional interference with contractual relations; and a request for a permanent injunction under the Uniform Trade Secrets Act, R.C. 1333.61, et seq.

{¶ 4} In a ruling issued at the close of evidence in the trial, the court upheld the validity of the noncompetition agreements. It did find, however, that the geographic restrictions contained in the noncompetition clauses were too onerous to be enforced because they encompassed any place in the country that LMI did work. It reformed those restrictions to limit noncompetition to the "Greater Cleveland Metropolitan Area." It then submitted the amended noncompetition agreements and the trade secrets violations to the jury. In a general verdict, the jury found against each individual defendant and the corporation, awarding damages of $4,000 per individual defendant and $45,000 against Excelas. The parties did not request interrogatories to test the jury verdict.

{¶ 5} Following the verdict, LMI asked the court to enter a permanent injunction against eight of the individual defendants and enforce the terms of the noncompetition, nonsolicitation, and confidentiality agreements. The court issued "half-sheet" judgment entries that summarily denied a permanent injunction for the nonsolicitation and

confidentiality agreements. The court addressed the noncompetition agreements in a written opinion. It noted that LMI sought a permanent injunction to prevent the defendants from working for Excelas for an amount of time equal to the time during which they worked in violation of their non-compete agreements. LMI also asked that Bourgeois be prevented from soliciting clients for a period of 12 days — the amount of time in which she violated her nonsolicitation agreement.

{¶ 6} The court refused to enter a permanent injunction on the noncompetition claim because LMI did not show that it suffered an irreparable injury. It noted that each defendant had been ordered to pay damages as a result of the breach of their agreements, thus being made whole: "In short, not only is an adequate remedy at law available, it has been given. The wrong of competing unfairly has been righted by the jury's award: LMI as received fair and reasonable redress."

{¶ 7} On appeal, LMI appears to limit its arguments to the individual defendants, arguing that the court abused its discretion by refusing to enter a permanent injunction on the trade secrets (confidentiality) and noncompetition agreements. Although LMI mentions the nonsolicitation agreements, it does not separately argue its entitlement to a permanent injunction under that claim, so we need not address it.

## II. Trade Secrets

{¶ 8} The court did not issue a written opinion on LMI's request for a permanent injunction barring the defendants from using LMI's trade secrets. Nevertheless, we think it plain that the reasoning the court applied in rejecting a permanent injunction on the noncompetition claims heavily informed and perhaps outright controlled its decision to deny injunctive relief on the trade secrets claim. Indeed, there are such significant points of overlap in the trade secrets and noncompetition arguments that we believe it fair to apply the court's reasoning in its written opinion to the trade secrets claim.

A

{¶ 9} An injunction is an extraordinary remedy in equity, and being a creature of equity, it may not be demanded as a matter of right. *Perkins v. Village of Quaker City* (1956), 165 Ohio St. 120, 133 N.E.2d 595, syllabus. However, the Uniform Trade Secrets Act specifically provides for injunctive relief in trade secrets cases: "Actual or threatened misappropriation may be enjoined." R.C. 1333.62(A).

{¶ 10} When an injunction is authorized by a statute, "[t]he party seeking a permanent injunction must demonstrate by clear and convincing evidence that they [sic] are entitled to relief under applicable statutory law, that an injunction is necessary to prevent irreparable harm, and that no adequate remedy at law exists." *Acacia on the Green Condominium Assoc., Inc. v. Gottlieb*, 8th Dist. No. 92145, 2009-Ohio-4878, ¶18, citing *Proctor & Gamble Co. v. Stoneham* (2000), 140 Ohio App.3d 260, 268, 747 N.E.2d 268.

{¶ 11} Injunctive remedies are an important component of the trade secrets law, because they "serve the important purposes of encouraging innovation and helping to preserve standards of commercial morality." Rowe, Introducing a Takedown for Trade Secrets on the Internet (2007), 2007 Wis.L.Rev. 1041, 1074, citing *DVD Copy Control Assn., Inc. v. Bunner* (2003), 31 Cal.4th 864, 880, 75 P.3d 1. Intellectual property can be expensive to develop, yet it is difficult to keep a trade secret inviolate and exclusive. The legal protection of a trade secret assures those who develop intellectual property that the cost of developing the property will not be in vain. *Kewanee Oil Co. v. Bicron Corp.* (1974), 416 U.S. 470, 480-481, 94 S.Ct. 1879, 40 L.Ed.2d 315.

{¶ 12} Although it is said that injunctions will not be granted unless there is a showing of both irreparable harm and an inadequate remedy at law, in the context of permanent injunctions, those two requirements are essentially one and the same. "An irreparable injury is one for the redress of which, after its occurrence, there could be no plain, adequate and complete remedy at law, and for which restitution in specie (money) would be impossible, difficult or incomplete." *Cleveland v. Cleveland Elec. Illum. Co.* (1996), 115 Ohio App.3d 1, 14, 684 N.E.2d 343, quoting *Ohio Turnpike Comm. v. Texaco* (1973), 35 Ohio Misc. 99, 105, 64 O.O.2d 383, 297 N.E.2d 557. The federal courts take a similar view. See, e.g., *Abbott Laboratories v. Mead Johnson & Co.* (C.A.7, 1992), 971 F.2d 6, 11; *Lewis v. S.S. Baune* (C.A.5, 1976), 534 F.2d 1115, 1124.

{¶ 13} The court's opinion did not distinguish between the threat of irreparable harm to LMI and whether it had an adequate remedy at law, so we likewise do not differentiate them as separate elements that must be shown as a requirement for obtaining a permanent injunction.

B

{¶ 14} When a trade secret is misappropriated, a threat of actual harm is presumed. *Proctor & Gamble*, 140 Ohio App.3d at 274. This is because the point of a "secret" is that no one else knows about it. Unlike a published patent, a trade secret derives its value only to the extent that it remains secret. Thus, "the 'proprietary aspect' of a trade secret flows, not from the knowledge itself, but from its secrecy." *DTM Research, L.L.C. v. AT & T Corp.* (C.A.4, 2001), 245 F.3d 327, 332. The courts therefore find that "[t]he existence of an actual threat of irreparable injury may be established by showing that the employee possessed knowledge of the employer's trade secrets." *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267, citing *Arthur Murray Dance Studios v. Witter* (C.P.1952), 62 Ohio Law Abs. 17, 53-56, 105 N.E.2d 685.

{¶ 15} The evidence at trial showed that LMI suffered irreparable harm from the misappropriation of its trade secrets. LMI expended money and effort into developing proprietary information that it wished to remain confidential and it took steps to protect this information by requiring its employees to sign nondisclosure and confidentiality agreements.

Despite being under agreement not to disclose LMI trade secrets, Bourgeois and the other individual defendants took LMI's proprietary information like pricing strategies and used them so that Excelas could solicit and underbid LMI clients. The evidence showed that Bourgeois used information compiled by LMI on existing customer preferences to win jobs for Excelas that, as an upstart, it might not have qualified enough to acquire. Excelas told a potential (and then LMI) client that Excelas could readily perform a documents review to the client's existing standards because Excelas employees who formerly worked for LMI knew how the client wanted its work product presented. Excelas was particularly brash in the manner in which it misappropriated LMI's customer preferences — its employees essentially copied those preferences to the point that a newly-hired former LMI employee was told that the "guidelines" Excelas used (its terminology for "preferences"), would be familiar to her: "You will crack up that some of our 'terminology' was changed so it did not look like it was copied from 'the-company-that-must-not-be-named (LMI).'"

{¶ 16} The court found that LMI had an adequate remedy at law because the damages award ordered by the jury was intended to compensate LMI for its economic injury caused by the defendants' unfair competition: "In short, not only is an adequate remedy at law available, it has been given."

{¶ 17} The purpose of contract damages is to compensate the nonbreaching party for the loss suffered as a result of the breach. *Lake Ridge Academy v. Carney* (1993), 66 Ohio

St.3d 376, 381, 613 N.E.2d 183. The purpose of an injunction is to prevent *future* harm. *Lemley v. Stevenson* (1995), 104 Ohio App.3d 126, 136, 661 N.E.2d 237. The act explicitly codifies this distinction, providing for injunctive relief in addition to the monetary damages. See R.C. 1333.63(A); *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 538-539, 2000-Ohio-475, 721 N.E.2d 1044. In doing so, the act maintains the common-law understanding that injunctions are preventative in the sense that they are designed to prevent future harm:

{¶ 18} "It must be remembered that, in discussing 'irreparable harm,' the proper focus is not so much on what kind of damage the misappropriator has already inflicted, but what damage the misappropriator may inflict in the future. As explained above, injunctions concern the prevention of future harm, not compensation for, or punishment of, past harm. The law has other remedies that are designed to compensate and punish; i.e., the 'inadequate remedy at law' requirement cannot be met." Casagrande, Permanent Injunctions in Trade Secret Actions: Is a Proper Understanding of the Role of the Inadequate at Law/Irreparable Harm Requirement the Key to Consistent Decisions? (2000), 28 AIPLA Q.J. 113, 132.

{¶ 19} LMI's trade secrets were undeniably misappropriated and used by the defendants to LMI's disadvantage. Without an injunction, it is plain that those trade secrets would continue to be used in the future against LMI. "Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to

protect and measured by the extent of the impairment to be prevented by the injunction. In calculating that impairment, the court may look not only at past losses but also at potential harm." *A.F.A. Tours, Inc. v. Whitchurch* (C.A.2, 1991), 937 F.2d 82, 87. Indeed, the failure to show pecuniary loss from the missappropriation of a trade secret does not foreclose the use of an injunction to bar any future use of the trade secret. *Schanfield v. Sojitz Corp. of Am.* (S.D.N.Y., 2009), 663 F.Supp.2d 305, 350.

{¶ 20} As the defendants concede in their statement of the issues, the monetary damages awarded at trial were intended to make LMI whole for the breach of the confidentiality agreeements "up through the date of trial." See Appellees' Brief at 1. Future violations of the confidentiality agreements were not (and could not be) an element of what were, in essence, contract damages. R.C. 1333.62(A) allows the court to enjoin "threatened" violations of the trade secrets act, and LMI made a compelling case that the defendants would, unless enjoined, continue to use the misappropriated trade secrets. The court erred as a matter of law by finding that an award of compensatory damages showed that LMI's harm was not "irreparable" for purposes of an injunction.

C

{¶ 21} The court also found, under the rubric of an adequate remedy of law, that the prospective enforcement of the breached agreements:

{¶ 22} "[W]ould not protect the plaintiff's legitimate business interest by preventing unfair competition because the unfair competition occurred when Excelas first opened for business and was able to quickly establish itself as a competitor to the plaintiff by the efforts of the breaching defendants.  Future competition by Excelas will be ordinary and fair and is not the type of competition a non-compete is designed to stifle."

{¶ 23} The defendants used LMI's proprietary information to start Excelas and were forced to pay compensation for the misappropriation.  But it does not follow that the defendants will discontinue use of that information prospectively.  The court conceded that Excelas was essentially built on LMI's trade secrets and quickly made itself a direct competitor to LMI.  Any future business it conducts will necessarily be conducted on what had been misappropriated.

{¶ 24} The defendants argue that the court did not abuse its discretion by refusing to grant a permanent injunction because LMI did not present any evidence of future damages.  Absent a showing of future harm, they maintain that the court could suppose that the damages awards sufficiently compensated LMI and was an adequate remedy at law.

{¶ 25} This argument runs counter to the purposes of the trade secrets law, which is to keep proprietary information secret.  Even though the law provides for damages in the event a secret is misappropriated, an award of damages without an injunction to enjoin the use of the

trade secrets does not make the person holding the trade secrets whole. The court specifically acknowledged this point:

{¶ 26} "The court recognizes that not enforcing an expired covenant non-competition agreement where damages have been calcuated and awarded may cause some employee-plaintiffs to gamble at the expense of employer-defendants. An employee may decide to breach in the hope that the breach is not discovered for the duration of the non-compete with the expectation that the worst that can happen thereafter is a lawsuit for damages that are difficult to calculate and prove. The employer in that circumstance is stuck with having not only incurred damages but, from its perspective, continuing to incur them because the employee has never taken the 'time out' from competition that the covenant required. But an employer in that situation may simply elect a remedy: damages or an injunction."

{¶ 27} The court's statement shows why both damages and injunctive relief are necessary in some trade secrets cases. If recovery is limited solely to damages, the misappropriator can simply buy the stolen secret. But this remedy deprives the holder of misappropriated information of its intrinsic value — the secret itself. "A trade secret once lost is, of course, lost forever." See *FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.* (C.A.2, 1984), 730 F.2d 61, 63. If recovery is limited solely to an injunction, on the other hand, enjoining a misappropriated secret will not compensate the holder of the secret for any

unfair economic advantage the misappropriator derived from taking the secret in the first place.

{¶ 28} The court's view that LMI could choose between damages or an injunction created only half a remedy and was erroneous as a matter of law. In addition to the availability of damages, LMI was entitled to a rebuttable presumption of irreparable harm from the loss of its proprietary information. *Computer Assocs. Int'l v. Quest Software, Inc.* (N.D.Ill. 2004), 333 F.Supp.2d 688, 700. The burden of proving that an injunction should not issue is thus on the party opposing the injunction.

{¶ 29} The court found that "unfair competition" occurred when "Excelas first opened for business and was able to quickly establish itself as a competitor to the plaintiff by the efforts of the breaching defendants." It is unclear exactly which secrets were used in the process, as the parties did not submit interrogatories to the jury. However, in their briefs, defendants challenge certain aspects of the evidence, arguing for example that the evidence did not support a finding that Excelas misappropriated LMI's pricing or marketing strategies. They did not, however, appeal from the jury verdict. When a "general verdict has been returned untested by special interrogatories, it will be presumed that the jury found in favor of the successful party on all issues * * *." *H.E. Culbertson & Co. v. Warden* (1931), 123 Ohio St. 297, 303, 175 N.E. 205. We must therefore assume that the jury found in favor of LMI on all of the claims in its complaint and the court should have enforced the terms of the

confidentiality agreements pursuant to R.C. 1333.62(A). The terms used for the permanent injunction should be similar to those ordered by the court in its April 2, 2008 temporary restraining order.

### III. Noncompetition

{¶ 30} The court also denied LMI's request for injunctive relief on the nonsolicitation agreements, finding that enforcement of those agreements "almost four years after the last breach in the case of some defendants," would not protect LMI's business interests because "the unfair competition occurred when Excelas opened for business and was able to quickly establish itself as a competitor to the plaintiff by the efforts of the breaching defendants."

{¶ 31} As with the trade secrets claims, the court incorrectly found that the availiability of damages meant that LMI could not be granted a permanent injunction. In *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 565 N.E.2d 540, the Ohio Supreme Court made it clear that a party claiming the breach of a noncompetition agreement could obtain both damages and injunctive relief. The supreme court found the noncompetition agreements at issue in that case were valid, enjoined the employees from further violations of the agreement, and remanded the case for a determination of damages, if any, caused by the violation of the noncompetition agreement. Id. at 9.

{¶ 32} Noncompetition agreements are, at bottom, a category of intellectual property regulation because the harm sought to be avoided is that an employee will know so much

about the former employer that it will give a new and directly competing employer an unfair competitive advantage. In *Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*, 8th Dist. No. 90822, 2008-Ohio-5470, we considered the "inevitable disclosure" rule of trade secrets and stated that "[t]he rule against inevitable disclosure holds that a threat of harm warranting injunctive relief exists when an employee with specialized knowledge commences employment with a competitor." Id. at ¶27. We went on to say that the rule "is applied when a former employer seeks 'injunctive' relief when a former employee begins work with a competitor while the noncompetition clause has not expired." Id. The rule has been justified because the courts have recognized that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so." *FTC v. Exxon Corp.* (D.C.Cir.1980), 636 F.2d 1336, 1350.

{¶ 33} The evidence produced by LMI at trial convincingly showed that individual defendants breached the terms of their noncompetition agreements. As with the trade secrets violations, the court should have presumed that LMI suffered irreparable harm when ruling on the request for a permanent injunction, particularly since the defendants were likewise found to be in possession of LMI's trade secrets.

{¶ 34} The court found that LMI's injuries were not irreparable because so much time had elapsed between the "last" breaches of the noncompetition agreements. The court noted,

for example, that one employee's one-year noncompetition ban would have expired in February 2006 (she left LMI in February 2005 and started to work for Excelas in April 2005). The court found that the unfair competition occurred when Excelas first opened for business and that "[f]uture competition by Excelas will be ordinary and fair and is not the type of competition a non-compete is designed to stifle."

{¶ 35} The noncompetition agreements provided that "[t]his Agreement will be extended for a period of time equal to the period required to secure the enforcement of this Agreement." The court impliedly upheld the validity of this provision when it found the noncompetition agreements enforceable. Despite doing so, it made no mention of this provision when refusing to enter the permanent injunction on grounds that too much time had elapsed to justify enforcement of the noncompetition clauses. The delay mentioned by the court was caused by LMI's necessity to seek legal redress after the defendants openly breached their individual agreements. Delay was not a proper cause for refusing to issue the permanent injunction.

{¶ 36} We also find that the court erred by concluding that any harm caused by the violation of the noncompetition agreements occurred only when Excelas opened for business and that future competition by Excelas would be "ordinary and fair." Each day when the individual defendants worked in violation of their noncompetition agreements was a day in which Excelas gained an unfair competitive advantage. These employees were specifically

hired away from LMI because they brought a wealth of knowledge, gained from LMI, that allowed Excelas to go from being a start-up to a direct competitor in a fraction of the time it might take without such information. Without the knowledge that the defendants brought to Excelas, it is highly unlikely that Excelas could have so quickly become a serious competitor to LMI. The harm to LMI thus continues to this day and LMI is entitled to enforcement of that to which both sides agreed.

{¶ 37} It follows that the court abused its discretion by refusing to grant a permanent injunction and enforce the time remaining on each individual defendant's respective noncompetition agreement. We are aware that enforcement of the noncompetition agreements might cause a hardship to the affected employees, but each of the employees willingly violated the terms of their noncompetition agreements and now must answer at law for their breach. Despite having been ordered to pay damages for their breach, the future harm caused by the employee breaches continues to this day. On remand, the court is ordered to calculate the time remaining on each individual defendant's noncompetition agreement, less the amount of time during which the temporary restraining order remained in effect.

{¶ 38} This cause is reversed and remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellees its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common

Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____

MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, A.J., and
MARY J. BOYLE, J., CONCUR