[Cite as *Total Quality Logistics, L.L.C. v. Johnson*, 2023-Ohio-1319.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

TOTAL QUALITY LOGISTICS, LLC, :

    Appellant, : CASE NO. CA2022-09-049

                          : O P I N I O N
- vs -                              4/24/2023

                                 :

CHRISTOPHER M. JOHNSON, et al., :

    Appellees. :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2021 CVH 0677

Graydon Head & Ritchey LLP, and Daniel J. Knecht, Scott K. Jones, and Alexandra M. Berry, for appellant.

Luper, Neidenthal & Logan, LPA, and Christopher R. Pettit and Kyle T. Anderson, for appellees.

**PIPER, J.**

{¶1} Appellant, Total Quality Logistics, L.L.C. ("TQL"), appeals the decision of the Clermont County Court of Common Pleas granting a Civ.R. 12(B)(1) motion for dismissal in favor of appellees, Christopher Johnson, and Patriot Logistics, L.L.C. ("Patriot Logistics") (collectively, "Appellees"). For the reasons detailed below, we reverse the trial court's decision and remand this case for further proceedings.

**Preliminary Facts and Procedural History**

{¶2} TQL is a third-party logistics company, operating in the freight brokerage industry. Johnson, a North Carolina resident, is a former employee of TQL. Johnson worked for TQL from September 2015 to July 23, 2020, in TQL's Charlotte, North Carolina office.

{¶3} Johnson signed an Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement (the "Agreement") with TQL. The Agreement prohibited, among other acts, the misuse of confidential information and the misappropriation of trade secrets. The Agreement provided a "Restricted Period" "for a period of one (1) year after termination or cessation" of the employee's employment. Pursuant to the Agreement, TQL may seek an injunction restraining an employee from violating the Agreement.

{¶4} On June 23, 2020, while still employed with TQL, Johnson formed Patriot Logistics, a North Carolina limited liability company. Johnson obtained federal brokerage authority for Patriot Logistics on July 22, 2020, and resigned from TQL the next day, July 23, 2020. TQL contends that Patriot Logistics is wrongfully using confidential information. TQL alleges that Johnson's actions breached the Agreement and that he had misappropriated trade secrets.

{¶5} On June 4, 2021, TQL filed a complaint claiming it should be granted compensatory damages as well as injunctive relief in the Clermont County Court of Common Pleas. Appellees removed that case to federal court based on diversity jurisdiction provided in 28 U.S.C. 1332. TQL moved to remand the case to state court, arguing that the $75,0000 "amount in controversy" requirement was not met. On July 7, 2021, the federal trial court denied TQL's motion to remand after finding that TQL had failed to make a binding stipulation and that TQL neglected to include the claim for injunctive relief in the stipulation.

{¶6} On July 9, 2021, TQL voluntarily dismissed its case pursuant to Fed.R.Civ.P. 41(a)(1)(i). On July 13, 2021, TQL refiled its action in the Clermont County Court of Common Pleas, asserting substantially the same allegations as in the earlier complaint. Appellees, again, removed the case to federal court.

{¶7} TQL then moved to remand the case to the Clermont County Court of Common Pleas. The federal trial court this time determined that TQL filed a binding stipulation which included the claim for injunctive relief. Based upon receiving the type of stipulation the federal court previously indicated it needed in order to remand a case, the federal trial court remanded the case determining it lacked jurisdiction. *Total Quality Logistics, L.L.C. v. Johnson*, S.D.Ohio No. 1:21-cv-467, 2021 U.S. Dist. LEXIS 147519, at *10 (Aug. 5, 2021).

{¶8} Upon remand to Clermont County, Appellees suggested TQL accept $75,000 to settle its claims, which TQL rejected. TQL stated emphatically it was not willing to accept a settlement unless Johnson was "willing to honor his non-compete." In additional correspondence, Appellees' counsel represented there had been a "miscommunication." Appellees' counsel suggested that TQL's "maximum amount" of recovery was $75,000 pursuant to the stipulation previously filed in federal court for jurisdictional purposes. Appellees' counsel stated it would provide the $75,000 as a tender of payment, not as an offer of settlement, and insisted that its willingness to tender payment effectively ended the case. Appellees' counsel then requested TQL's bank information so that it could complete a wire transfer. Appellees' counsel indicated it would deposit the funds with the Clerk of Courts if the requested bank information was not received.

{¶9} TQL responded that there was no miscommunication and that concluding the litigation with a monetary payment was not acceptable "because it failed to include any injunctive relief." TQL's counsel again rejected any "offer of payment," "tender of payment,"

or "transfer of payment." Referencing the need for injunctive relief, TQL's position was that Johnson could not unilaterally decide to "buy out" his restrictive covenant and continue to use misappropriated confidential information.

{¶10} Appellees then filed a Civ.R. 12(B)(1) motion to dismiss. Appellees claimed a tender of the $75,000 referenced in TQL's jurisdictional stipulation mooted all TQL's claims for relief. Appellees argued that with no justiciable issue needing resolution, the trial court was divested of subject-matter jurisdiction. Following additional briefing, the trial court found that TQL "stipulated to accept a total recovery of 75,000.00, inclusive of all damages and injunctive relief" and that once the money was tendered to the Clerk "the matter becomes moot" rendering it non-justiciable.[1] The trial court then entered a final appealable order dismissing the case with prejudice. TQL now appeals, raising three assignments of error for review.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED BY CONSTRUING TQL'S JURISDICTIONAL STIPULATION AS A BINDING AGREEMENT TO ACCEPT A $75,000 CASH PAYMENT IN LIEU OF INJUNCTIVE RELIEF.

{¶13} Assignment of Error No. 2:

{¶14} THE TRIAL COURT ERRED WHEN IT DISMISSED TQL'S COMPLAINT BECAUSE IT REQUIRED TQL TO ACCEPT A LEGAL REMEDY IN LIEU OF ITS WELL-PLEADED REQUEST FOR INJUNCTIVE RELIEF.

{¶15} Assignment of Error No. 3:

---

1. It is well established that courts only decide "actual controversies" between parties. *Forest Hills Local School Dist. Bd. of Edn. v. Huegel*, 12th Dist. Clermont No. CA2002-07-050, 2003-Ohio-3444. "To be justiciable, a controversy must be grounded on a present dispute, not on a possible future dispute." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 17. This also includes considerations, such as standing and ripeness. 1 Ohio Jurisprudence 3d, Actions, Section 25 (2023). The pivotal issue concerning justiciability in this case rests upon the trial court's finding of mootness.

{¶16} THE TRIAL COURT ERRED BY DISMISSING TQL'S CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION WITH PREJUDICE.

{¶17} Disposition of TQL's first two assignments of error resolve this appeal and will be combined for the purposes of discussion. TQL argues the trial court erred by granting Appellees' motion to dismiss. It maintains that the trial court erroneously concluded that TQL's claims were moot, thus rendering the matter nonjusticiable. TQL takes exception to the trial court's determination that TQL agreed to accept a $75,000 payment alone, in lieu of its request for injunctive relief. Contrary to the trial court's finding, TQL contends that it never placed a "fair market value" on the injunctive remedy seeking to terminate future harm. TQL also suggests the trial court was misguided in its contractual interpretation of the federal jurisdictional stipulation as being akin to a settlement agreement intended to resolve both the issues of compensatory damages and the injunction to prevent future harm.

**Federal Court Proceedings**

{¶18} It is worth examining prior proceedings in the context of the issues presently before this court. As previously noted, Appellees twice removed this matter to federal court based upon diversity jurisdiction. A party can remove an action from state court if the federal court to which the action is removed would otherwise have had original jurisdiction. 28 U.S.C. 1441(a). Generally, where the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, a federal court has jurisdiction to hear the case. 28 U.S.C. 1332(a).

{¶19} It is undisputed a plaintiff is the master of his own complaint; thus, a plaintiff wishing to avoid removal can sue in state court for less than the jurisdictional amount,

thereby preventing removal even if the parties are diverse.[2] *Heyman v. Lincoln Natl. Life Ins. Co.*, 781 F. App'x 463, 469 (6th Cir. 2019). "If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586 (1938).

**{¶20}** As noted above, after TQL refiled its complaint, Appellees again removed the case to federal court and TQL again wanted the case remanded to state court. This time TQL complied in filing the type of stipulation necessary for the federal court to remand the matter to Clermont County, being:

STIPULATION

As evidenced by the signatures of counsel for Plaintiff Total Quality Logistics, LLC ("TQL"), below, TQL hereby stipulates that the relief it seeks, and will accept, is limited to judgment of the following in a cumulative amount that is less than $75,000.00, inclusive of compensatory damages, punitive damages, attorney's fees, and the fair value of any injunctive relief:

A. Issue immediate, preliminary, and permanent injunctive relief prohibiting:

1. Defendant Christopher M. Johnson from any further violation of the Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement ("Non-Compete") with TQL, plus attorney's fees as provided in Section 9(c) of the Non-Compete;

2. Defendant Christopher M. Johnson and Defendant Patriot Logistics Services, LLC, from any further misappropriation of TQL's trade secret information; and

3. Defendant Patriot Logistics Services, LLC, from any further tortious interference with TQL's business relations;

---

2. Federal courts have attempted in various cases to affix dollar values to claims for injunctive relief; however, assessing a monetary value is problematic as it can be highly speculative. *D & R Party, L.L.C. v. Party Land, Inc.*, 406 F.Supp.2d 1382, 1384-1385 (N.D.Ga.2005).

B.  Award compensatory damages in favor of TQL in an amount to be determined at trial in excess of $25,000.00, but less than $75,000.00, inclusive of any award of punitive damages, attorney's fees, and the fair value of any injunctive relief;

C.  Award punitive damages in favor of TQL in an amount less than $75,000.00, inclusive of any award of compensatory damages, attorney's fees, and the fair value of any injunctive relief;

D.  Award attorney's fees as provided in Section 9(c) of the Non-Compete or as otherwise provided by law, in an amount of less than $75,000.00, inclusive of any award of compensatory damages, punitive damages, and the fair value of any injunctive relief;

E.  Court costs, prejudgment interest, and post-judgment interest; and

F.  Any other relief that this Court deems just and proper.

This Stipulation is intended to be unequivocal and binding on TQL, and it is TQL's intention that this Stipulation be used by the Court to limit the amount of any award to it.

So stipulated on <u>July 23, 2021</u>.

**Federal Trial Court's Decision to Remand**

**{¶21}**  The federal trial court found that TQL's stipulation unequivocally stated that it would only accept judgment for damages "in a cumulative amount that is less than $75,000.00, **<u>inclusive of</u>** compensatory damages, punitive damages, attorney's fees, and the fair value of any **<u>injunctive relief</u>**."  *Johnson*, 2021 U.S. Dist. LEXIS 147519 at *8 (Emphasis in original).[3]  Therefore, it remanded the case to state court.  *Id.* at *9.  It is noteworthy the injunctive relief, which sought to prevent the possibility of future harm, was

---

3. The federal court emphasized that the claim for injunctive relief is included in the stipulation because TQL's previous attempt to file a stipulation lacked a binding effect and lacked inclusion of the claim for injunctive relief.  Including reference to the claim for injunctive relief made it clear that both claims for relief would be remanded.  The federal court's decision did not assign a monetary value to the claim for injunctive relief and noted more than once the stipulation restricted *damages* and did not reference a monetary value going to the claim for injunctive relief.

not assigned a specific value. Furthermore, such a decision is not appealable. 28 U.S.C.S. § 1447(d); *Linton v. Airbus Indus.*, 30 F.3d 592, 595 (5th Cir. 1994).

**State Trial Court's Decision Upon Receiving Remand**

**{¶22}** After the case was remanded, Appellees attempted to tender the $75,000 to TQL to satisfy both claims for relief within TQL's complaint. TQL however emphatically declined such tender. Appellees then moved to dismiss TQL's complaint arguing the tender of $75,000 mooted TQL's claims for relief. Appellees argued there were no justiciable issues in controversy which meant the trial court lacked subject-matter jurisdiction.[4]

**{¶23}** In interpreting the significance of the federal stipulation, the trial court applied principles of contract law and found that "TQL unequivocally agreed to accept a total of $75,000.00 as damages in this case." The trial court determined "the maximum amount [TQL] could walk away from a jury trial is $75,000.00." Such findings may be accurate as to compensation for the losses TQL had suffered. However, the trial court also construed the stipulation to mean that TQL specifically agreed to accept $75,000 in total satisfaction of its claims, including the claim for injunctive relief.

**{¶24}** Evidently the trial court determined that TQL's request for an equitable remedy (requesting an order that Appellees refrain from any future misconduct) had to possess a dollar value. Yet if an order refraining Appellees from causing further harm had been issued, Appellees' compliance would be presumed and there would be no subsequent monetary damages. Notably, the trial court made no distinction between past compensatory damages and the equitable remedy of injunction.

**Appeal**

---

4. For federal jurisdiction purposes, TQL asserts that the amount of $75,000 applies to a judgment sought against each defendant. In other words, separate complaints would have avoided the federal court jurisdictional requirement and could have been filed against each defendant for $75,000. However, the extent of compensatory damages available was not litigated below and is better addressed upon remand from this court.

*Standard of Review*

{¶25} "In ruling on a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction, the trial court must determine whether the claim raises any action cognizable in that court." *Telhio Credit Union v. Bryant*, 10th Dist. Franklin No. 19AP-17, 2019-Ohio-4866, ¶ 17. Subject-matter jurisdiction involves "'a court's power to hear and decide a case on the merits and does not relate to the rights of the parties.'" *Robinson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 10AP-550, 2011-Ohio-713, ¶ 5, quoting *Vedder v. Warrensville Hts.*, 8th Dist. Cuyahoga No. 81005, 2002-Ohio-5567, ¶ 14. "In deciding a motion to dismiss for lack of subject-matter jurisdiction, the trial court may consider evidence outside of the complaint." *Cerrone v. Univ. of Toledo*, 10th Dist. No. 11AP-573, 2012-Ohio-953, ¶ 5, citing *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus.

{¶26} We conduct a de novo review of a trial decision dismissing a complaint for lack of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1). *Bla-Con Industries, Inc. v. Miami Univ.*, 12th Dist. Butler No. CA2006-06-127, 2007-Ohio-785, ¶ 7. "'The issue of mootness is a question of law,' and therefore this court reviews a trial court's decision finding a matter to be moot under the de novo standard of review." *Telhio* at ¶ 18, quoting *Tucker v. Leadership Academy for Math & Science of Columbus*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 7.

*Mootness and Justiciability*

{¶27} The Ohio Constitution limits the original jurisdiction of common pleas courts to "justiciable matters." Ohio Constitution, Article IV, Section 4(B). A case is moot if it "'seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any

practical legal effect upon a then-existing controversy.'" *State ex rel. Cincinnati Enquirer v. Hunter*, 141 Ohio St.3d 419, 2014-Ohio-5457, ¶ 4, quoting *In re L.W.*, 168 Ohio App.3d 613, 2006-Ohio-644, ¶ 11 (10th Dist.).

**{¶28}** When a case becomes moot, dismissal of the case is appropriate because the case no longer presents a justiciable controversy. *Siliko v. Miami Univ.*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, ¶ 33-34; *Rithy Properties, Inc. v. Cheeseman*, 10th Dist. Franklin No. 15AP-641, 2016-Ohio-1602, ¶ 14. "An action may be rendered moot when the litigant receives the relief sought before completion of the lawsuit." *Brunner Firm Co., L.P.A. v. Bussard*, 10th Dist. Franklin No. 07AP-867, 2008-Ohio-4684, ¶ 35.

*Injunctive Relief*

**{¶29}** An injunction is an extraordinary remedy in equity, and being a creature of equity, it may not be demanded as a matter of right. *Perkins v. Village of Quaker City*, 165 Ohio St. 120 (1956), syllabus. "'It is well-established that in order to obtain an injunction, the moving party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists.'" *Total Quality Logistics, L.L.C. v. Tucker, Albin & Assocs.*, 12th Dist. Clermont No. CA2021-06-031, 2022-Ohio-1802, ¶ 27, quoting *Middletown v. Butler Cty. Bd. Of Cty. Commrs.*, 12th Dist. Butler No. CA94-03-084, 1995 WL 55382, *2 (Feb. 13, 1995). Injunctive relief may also be available "to the extent that irreparable harm is actually threatened." *Id.* Irreparable injury or harm has been defined as "an injury for the redress of which, after its occurrence, there could be no plain, adequate and complete remedy at law, and for which restitution in specie (money) would be impossible, difficult or incomplete." *Id.*

*Analysis*

**{¶30}** In the present case, TQL refiled its complaint seeking damages for losses it

incurred as well as injunctive relief. The Agreement Johnson executed specifically entitled TQL to both remedies to protect its trade secrets and enforce the Agreement. *See Rogers v. Runfola & Assoc., Inc.*, 57 Ohio St.3d 5, 9 (1991) (injunctive relief available for breach of noncompetition agreement); *Litigation Mgt. Inc. v. Bourgeois*, 8th Dist. Cuyahoga No. 95730, 2011-Ohio-2794, ¶ 9 (injunctive relief available for protection of trade secrets).

**{¶31}** There is no dispute that TQL provided a stipulation, which is "inclusive of compensatory damages, punitive damages, attorney's fees, and the fair value of any injunctive relief." However, the trial court's decision effectively limited TQL to only a partial remedy. TQL did not state that it would accept money in lieu of injunctive relief. The "jurisdictional stipulation" does not require that TQL accept a cash-equivalent in forbearance of an injunction. In other words, the equitable remedy of injunctive relief, enforcing the Agreement, has no immediate ascertainable monetary value. The harm caused by wrongfully acquiring and using another's trade secrets and confidential information is difficult to discover and identify with certainty.

**{¶32}** Compliance with a court order to refrain from misconduct was the ultimate goal of the injunction sought. The value of that compliance, in this particular case, has no dollar value, and is not measurable in dollars. There would only be subsequent damages associated with an injunction if Appellees *later* defied the court's order to refrain from misconduct to the detriment of TQL.

**{¶33}** In *Bourgeois*, an employer prevailed at trial on its claim for damages caused by former employees who breached the terms of nondisclosure and trade secret agreements. *Bourgeois*, 2011-Ohio-2794 at ¶ 1. Following a jury trial, the employer was awarded damages against the defendants. *Id.* at ¶ 4. Following the verdict, the employer asked the court to enter a permanent injunction against the individual defendants and enforce the terms of the noncompetition, no solicitation, and confidentiality agreements. *Id.*

at ¶ 5.

**{¶34}** The trial court refused to enter a permanent injunction believing the employer did not show that it had suffered an irreparable injury because the employer received money damages as a result of the defendants' breach of their agreements. *Id.* at ¶ 6. Therefore, the trial court found that the employer had been "made whole" and denied the request for an injunction. *Id.*

**{¶35}** The Eighth District reversed. *Id.* at ¶ 38. In so doing, the Eighth District distinguished between past and future harm in relation to claims for compensatory damages and injunctive relief. *Id.* at ¶ 17. The appellate court stated "[t]he purpose of contract damages is to compensate the nonbreaching party for the loss suffered as a result of the breach." *Id.*, citing *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381 (1993). On the other hand, "[t]he purpose of an injunction is to prevent future harm." *Id.*, citing *Lemley v. Stevenson*, 104 Ohio App.3d 126, 136 (6th Dist. 1995).

**{¶36}** The Eighth District highlighted why both compensatory damages and injunctive relief are necessary in some cases. For example, in a trade secret case, "[i]f recovery is limited solely to damages, the misappropriator can simply buy the stolen secret." *Id.* at ¶ 27. However, "this remedy deprives the holder of the misappropriated information of its intrinsic value—the secret itself." *Id.* The court of appeals noted that "[n]oncompetition agreements are, at bottom, a category of intellectual property regulation because the harm sought to be avoided is that an employee will know so much about the former employer that it will give a new and directly competing employer an unfair competitive advantage." *Id.* at ¶ 32. In either case, an award of injunctive relief is separate and distinct from a calculation of damages for any loss suffered as a result of a breach of contract. *Id.* at ¶ 17.

**{¶37}** In resolving *Bourgeois*, the court concluded that the trial court essentially limited the employer to "only half a remedy." *Id.* at ¶ 28. That is, the Eighth District

concluded that the trial court erred as a matter of law when it effectively made the employer "choose between damages or an injunction." *Id.* Therefore, the appellate court reversed and remanded the matter for further proceedings.[5]

**{¶38}** Similar to the claims made in *Bourgeois*, TQL was seeking both compensatory damages and injunctive relief. In other words, TQL was seeking compensation for past losses and equitable relief to prevent *future harm. Id.* at ¶ 17. Nevertheless, the trial court interpreted the stipulation to be an all-encompassing settlement for only money damages. In applying principles of contract law, the trial court determined that TQL "stipulated to accept a total recovery of $75,000.00" and that once Appellees tendered that amount, the matter became moot. Our de novo review finds to the contrary. The request for an injunction refraining Appellees from causing the threat of future harm is distinct from compensatory damages already incurred.

**{¶39}** The trial court erred by dismissing TQL's complaint as moot and finding there was no controversy needing to be decided. In so doing, we find the Eighth District's decision in *Bourgeois* to be persuasive and comparable to the issue pending before this court. As in *Bourgeois*, the trial court's decision herein limited TQL to a partial remedy. TQL was not only seeking monetary damages, but also sought injunctive relief. TQL produced a stipulation necessary for the purpose of seeking remand from the federal court. However, it is undeniably clear that the stipulation did not waive injunctive relief or limit TQL to only monetary damages. As in *Bourgeois,* TQL is entitled to more than "only half a remedy."

**{¶40}** In fact, the stipulation provides that TQL was specifically seeking injunctive

5. There was far more factual development in the *Bourgeois* case than in the case at bar. In *Bourgeois*, the appellate court determined that the employer was entitled to a rebuttable presumption of irreparable harm from the loss of its proprietary information. *Id.* at ¶ 28. The court also found the trial court abused its discretion by not granting a permanent injunction to enforce the time remaining on the noncompetition agreements. *Id.* at ¶ 37. The record before this court is far more limited because the complaint was dismissed pursuant to Civ.R. 12(B)(1).

relief. While TQL's stipulation may have consequences as to actual compensatory damages, including attorney fees and punitive damages, it does not mean that TQL's request for an order directing Appellees to comply with the Agreement is moot or non-justiciable. While sections B, C, and D of the stipulation specifically addresses an "award" of monetary damages, section A addresses injunctive relief TQL was seeking to immediately prohibit Appellees from specific conduct alleged to be harming TQL. [6]

{¶41} TQL did not "agree to accept" monetary damages as a substitute for its equitable relief claim. The stipulation does not state, in clear terms or any other, that TQL would accept $75,000 as a full resolution of both the claim for compensatory damages and the claim for an injunctive relief prohibiting Appellees from harming TQL in the future. Nor did the stipulation indicate that TQL intended not to have a trial. The opposite, in fact, is true, as the stipulation specifically requests that an award of damages "be determined at trial." The language of the stipulation does not demonstrate an intent to sell its trade secrets or confidential information. In other words, the stipulation does not suggest that TQL was assigning a monetary value to the anticipated order arising from an injunction. TQL made it abundantly clear prior to Appellees' tendering the $75,000, that it was not willing to forego the equitable relief sought.

{¶42} In determining that TQL's stipulation was a clear contractual agreement to resolve all claims for $75,000, the trial court stated that "[t]o give TQL $75,000.00 plus injunctive relief would amount to a double recovery." As addressed in *Bourgeois*, an award of compensatory damages and injunctive relief is not a double recovery. TQL is seeking

---

6. As stated in the stipulation TQL sought to prohibit: "1. Defendant Christopher M. Johnson from any *further* violation of the Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement ("Non-Compete") with TQL, plus attorney's fees as provided in Section 9(c) of the Non-Compete; 2. Defendant Christopher M. Johnson and Defendant Patriot Logistics Services, LLC, from any *further* misappropriation of TQL's trade secret information; and 3. Defendant Patriot Logistics Services, LLC, from any *further* tortious interference with TQL's business relations." (Emphasis added).

compensatory damages to compensate for losses suffered in the past and injunctive relief to prevent the threat of future harm. *Bourgeois*, 2011-Ohio-2794 at ¶ 17. Whether TQL is entitled to any of the relief requested in its complaint remains to be addressed in future proceedings.[7]

**Conclusion**

**{¶43}** We find that the trial court has subject-matter jurisdiction and that an "actual, genuine controversy, the decision of which can definitely affect existing legal relations," exists in this case. *Telhio*, 2019-Ohio-4866 at ¶ 27. Therefore, it was an error to dismiss TQL's complaint for the reasons previously expressed.

**{¶44}** TQL did not receive the equitable relief sought by virtue of Appellees' tender of $75,000 for damages. *See Brunner Firm Co.*, 2008-Ohio-4684 at ¶ 35 (stating that an action may be rendered moot when a litigant receives the relief sought). Furthermore, TQL is entitled to have an award of damages decided at trial should the parties not resolve the issue of damages. The extent to which damages are restricted pursuant to the stipulation is a matter for the trial court's determination once the issue is fully briefed and submitted to the trial court. However, even if the issue of damages is resolved, the issue of injunctive relief remains to be decided.

**{¶45}** The outcome of this appeal concerns only the issue of mootness and justiciability as affecting subject-matter jurisdiction, and we make no determination on the merits of TQL's claims raised in its complaint. Therefore, we sustain TQL's first and second assignments of error and remand this matter to the trial court for further proceedings. Based on resolution of TQL's first and second assignments of error, we find TQL's third assignment

---

7. *Bourgeois* correctly highlighted that both damages and injunctive relief are necessary in some cases due to concerns that an opposing party could simply "buy" a stolen secret. *Id.* at ¶ 27. An offending defendant cannot simply "buy" the misappropriated competitive advantage.

of error to be moot and it need not be considered.

{¶46} Judgment reversed and remanded.


HENDRICKSON, P.J., and BYRNE, J., concur.